38 A.3d 378

**ATTORNEY GRIEVANCE COMMISSION OF MARYLAND**

v.

**Michele L. PAYER.**

**Misc. Docket AG No. 8, Sept. Term, 2011.**

Court of Appeals of Maryland.

Feb. 22, 2012.

Marianne J. Lee, Assistant Bar Counsel (Glenn M. Grossman, Bar Counsel, Attorney Grievance Commission of Maryland), for Petitioner.

Harold S. Link, Esquire, Cockeysville, MD, for Respondent.

Argued before BELL, C.J., HARRELL, GREENE, ADKINS, BARBERA, ALAN M. WILNER, (Retired, specially assigned) and DALE R. CATHELL, (Retired, specially assigned), JJ.

WILNER, J.

On April 1, 2011, Bar Counsel, on behalf of the Attorney Grievance Commission, filed a Petition for Disciplinary or Remedial Action against respondent, Michele Payer. The petition alleged the violation of numerous Maryland Lawyers' Rules of Professional Conduct (MLRPC) arising from two complaints—one by Abby Berow and her husband, Jeffrey Berow, and one by Makbul Mughal. Pursuant to Rule 16–757, we referred the petition to Judge Robert E. Cahill, Jr., of the Circuit Court for Baltimore County, to hear evidence and prepare and transmit findings of fact and proposed conclusions of law.

After a three-day hearing, Judge Cahill filed a memorandum of his findings and conclusions. With respect just to the Berow complaint, Judge Cahill concluded, by clear and convincing evidence, that respondent had violated MLRPC 1.1 (duty to provide competent representation), 1.3 (duty to act with reasonable diligence), 1.4(b) (duty to explain a matter to the extent necessary to permit the client to make informed decisions), and 1.7 (conflict of interest). With respect to both complaints, Judge Cahill concluded, by clear and convincing evidence, that respondent had violated MLRPC 1.15 and Rule 16–607 (commingling funds), MLRPC 8.1(a) and (b) (knowingly making false statements to Bar Counsel and failing to provide truthful information to Bar Counsel), and MLRPC 8.4(c) and (d) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation and engaging in conduct prejudicial to the administration of justice). Through an attorney, Harold Link, respondent filed extensive exceptions to Judge Cahill's findings and conclusions.

### *Judge Cahill's Findings Regarding Berow Complaint*

#### *The Initial Retainer*

The Berows initially retained respondent to file a Chapter 13 bankruptcy, which she did. Within a short period

of time, two other matters arose which folded into the bank-ruptcy case—the consequences of a creditor's temporary re-possession of Mr. Berow's automobile and a separate action against Ms. Berow's employer, Sinai Hospital, and her super-visor, Diane Bongiovanni. The charges against respondent arose from all three matters which, to an extent, overlapped in time, as well as from respondent's replies to inquiries by Bar Counsel that were triggered by them.

In mid–2009, the Berows were having financial difficulties. On June 3, 2009, Ms. Berow met with respondent, who main-tained a solo practice concentrating in bankruptcy cases. At that meeting, respondent was retained to file a Chapter 13 bankruptcy petition. Ms. Berow signed a retainer agreement that called for a fee of $4,500, of which $1,000 and an addition-al filing fee of $274 was to be paid immediately and $3,500 was to be paid "through the Plan from the Trustee." The next day, Ms. Berow paid respondent $1,274,[1] and a day later, on Friday, June 5, 2009, respondent filed a joint Chapter 13 petition on behalf of the Berows in the U.S. Bankruptcy Court for the District of Maryland.

### Repossession Of The Car

The following Monday, June 8, 2009, Mr. Berow's automo-bile was repossessed by Citizens Automobile Finance. Ms. Berow said that she or her husband notified Citizens of the bankruptcy, and the car was returned immediately, without any intervention by respondent. Indeed, Ms. Berow said that she did not advise respondent of the event until after the car had been returned. Respondent informed Bar Counsel that it was respondent's law clerk who arranged to have the car returned. On June 15, respondent, on behalf of the Berows, filed a motion for sanctions against Citizens for attempting to

---

1. Judge Cahill noted that there was a dispute as to how much more was eventually paid—Ms. Berow claimed she paid a total of $4,374 while respondent claimed that she received only $2,674—but, although Judge Cahill found generally that Ms. Berow was the more credible witness and discarded much of what respondent said with respect to other issues, he made no finding as to the total amount paid.

repossess the car in violation of the automatic stay that took effect under § 362 of the Bankruptcy Code. In her motion, respondent also claimed that the towing company had done $3,825 in damages to the car. She asked for sanctions in the amount of $9,445 in compensatory damages, $3,000 in attorneys' fees, and $10,000 in punitive damages. She claimed that she filed the motion because of the damages to the car and that, if she was not able to recover her fees from Citizens, the Berows would have to pay an additional fee of $1,500.

Respondent testified that, after the motion was filed, Ms. Berow called her and advised that she and her husband had "rethought" things and that the damages to the vehicle existed before the car was repossessed. Respondent said that Ms. Berow instructed her to call Citizens and offer to drop the motion for sanctions if Citizens would reduce the monthly payments on the car. Whether as part of that conversation or one that followed, respondent added that Ms. Berow told her that she and her husband had decided to surrender the car to Citizens and that one of them had brought the car to her office without informing her and without leaving the keys. After somehow learning that the engine was "blown," respondent concluded that the Berows purposely had attempted to deceive her.

Ms. Berow told a quite different story. She said that, after informing respondent that the vehicle had significant engine problems, respondent, on August 10, 2009, recommended that they surrender the car by leaving it at her office where it would be picked up by Citizens. According to Ms. Berow, respondent told her that she (respondent) had spoken with the attorney representing Citizens and that Citizens had agreed to abandon its claim for a deficiency balance on the loan in exchange for a surrender of the car and dismissal of the motion. Ms. Berow added that respondent never, in fact, contacted Citizens and never reached an agreement concerning the deficiency balance. Instead, Citizens notified the Berows of its intent to pursue a claim against them for the balance of the loan.

Faced with this conflict, that seemed to permeate the entire matter, Judge Cahill found that "[r]espondent's version of the facts was not credible"—that she "was not a credible witness in her own defense," that "[h]er testimony was sometimes internally contradictory and confused," that "her demeanor was combative and argumentative," and that "[r]espondent was not truthful when she informed Ms. Berow that Citizens Automobile had agreed to abandon its claim for a deficiency balance as consideration for return of the vehicle and dismissal of the Motion for Sanctions." In contrast, Judge Cahill found that "Ms. Berow's version of what happened was logical, and consistent" and that her testimony "generally was both clear and convincing."

### Complaint Against Sinai Hospital

Shortly after retaining respondent for the bankruptcy matter, Ms. Berow informed respondent about an incident that occurred at her work. She missed several days and was disciplined for failing to notify the hospital in advance that she would not be at work, and she was anxious to have the reprimand removed from her record. On June 10, 2009, Ms. Berow met with respondent and, in anticipation of an action being filed against the hospital, she signed another retainer agreement calling for an additional deposit of $1,500. Ms. Berow testified that she believed the total additional fee would be $3,500 and that the $1,500 was just to get started.

On June 23, 2009, respondent filed a complaint in the Circuit Court for Baltimore County on behalf of the Berows against Sinai Hospital and Ms. Berow's supervisor at the hospital, Diane Bongiovanni. The complaint alleged defamation, intentional infliction of emotional distress, harassment, endangerment, false advertising, loss of consortium, and negligence and sought damages on those counts ranging from $100,000 to $250,000. Several issues arose from that action, but we shall defer discussion of all but one of them and return to the bankruptcy case.

## Bankruptcy Case—Redux

One of the charges asserted in Bar Counsel's petition was that, when discussing and ultimately filing a complaint against Sinai and Ms. Bongiovanni, respondent failed to advise the Berows of "the potential conflict of interest in her representing the Berows in both their bankruptcy matter and the employment case . . ." and failed as well to notify the Chapter 13 trustee or to file any notice in the bankruptcy case that she had filed the complaint. Bar Counsel did not explain in his petition the precise nature of the potential conflict, but, as things developed, the dispute was less over *whether* there was such a potential conflict and more whether it was explained to the Berows.[2] Ms. Berow testified that respondent never mentioned the prospect of a potential conflict prior to filing the complaint against Sinai. Respondent claimed that she did discuss that with Ms. Berow and explained that she would need to get permission from the Bankruptcy Court to represent her in both cases, and that Ms. Berow insisted that respondent represent her in the action against Sinai. Again, Judge Cahill made a credibility assessment. He found "Ms. Berow's testimony to have been far more persuasive on this question."

As noted, the bankruptcy petition was filed on June 5, 2009. After the filing of the motion for sanctions against Citizens and the lawsuit against Sinai, respondent, according to Ms. Berow, recommended that the petition be withdrawn, as there was a potential for a significant recovery from the action against Sinai. Ms. Berow testified that respondent never advised the Berows that, if the petition were voluntarily withdrawn, a new one could not be filed for 180 days. Respondent adamantly maintained that she *did* advise the Berows of that consequence. On August 4, 2009, respondent filed a motion for voluntary dismissal of the bankruptcy petition.

---

2. In her exceptions, respondent concedes that there was a potential conflict, but claims that the conflict arose under bankruptcy law and not under MLRPC 1.7. It is not clear to us what the nature of the conflict would be, even under bankruptcy law.

As with the other conflicts in the testimony, Judge Cahill credited Ms. Berow's testimony, finding that respondent did not, prior to filing the dismissal motion, advise the Berows of the consequences of dismissing the petition. He found credible Ms. Berow's testimony that "had she and her husband known of this prohibition [against refiling within 180 days], they would not have agreed to the dismissal of their first bankruptcy petition."

Ms. Berow said that, on August 27, 2009—just three weeks after the petition had been dismissed—respondent called her and advised that the Berows needed to refile the petition, lest a second vehicle be repossessed, and that they needed to meet with her that day. The Berows testified that they went to respondent's office and, for the first time, were told not only about the 180–day prohibition, which respondent said she would ask the Bankruptcy Court to waive, but also about the potential conflict of interest on her part from representing the Berows in both their employment action and the bankruptcy case. The next day, respondent filed a second petition. Obviously dissatisfied with respondent's performance in both actions, the Berows consulted another attorney and, on September 14, 2009, terminated respondent's representation. The next day, respondent withdrew her appearance in the bankruptcy case. Other counsel was retained to prosecute that case.

At no time, with respect to either the first petition or the second, did respondent ever amend the appropriate schedule(s) to add the claims against Sinai and Ms. Bongiovanni or otherwise advise the Bankruptcy Court of that action. In correspondence with Bar Counsel, respondent claimed that she had prepared amended schedules to disclose the Sinai action as well as a motion to allow her to represent the Berows in both cases but that the Berows had terminated her employment before she had a chance to file them. Later, she testified that she did not file the amended schedules because the Berows failed to come to her office to sign them.

Based on Ms. Berow's testimony, which Judge Cahill found credible, and the documents sent to Bar Counsel in response to his inquiry, Judge Cahill disbelieved respondent's explanations and found that (1) she knew she was obliged to notify the Bankruptcy Court of the Sinai action and never did so, (2) she did not inform the Berows of the consequence of dismissing the bankruptcy, (3) she never told the Berows they needed to amend the schedules before the meeting with creditors, and (4) she misrepresented to Bar Counsel that she had prepared amended schedules and a motion to allow her to represent the Berows in both actions which was not the case.

### The Sinai/Bongiovanni Case—Redux

The factual conflicts between Ms. Berow and respondent regarding the bankruptcy case and the dispute with Citizens over the repossession played out as well regarding the actions against Sinai and Ms. Bongiovanni. Those conflicts are relevant not only to the manner in which respondent handled the lawsuit but, more important, to the manner in which she responded to Bar Counsel's inquiries, a matter discussed below.

The complaint against Sinai and Ms. Bongiovanni, as noted, was filed on June 23, 2009; it was served on June 29. Fiona Ong, Esq., an attorney representing the defendants, testified on deposition that she had tried on several occasions, by telephone and letter, to contact respondent to discuss the case and never received a response. On July 29—the 30th day after service of the complaint—Ms. Ong filed a Motion to Dismiss the action and for sanctions, which, despite respondent's assertions to the contrary, Judge Cahill found she never answered. Respondent claimed that she did speak with Ms. Ong on the telephone but that she never received any letters from her. Judge Cahill believed Ms. Ong's testimony and found respondent's testimony (and corroborating testimony of her mother and her fiancé) "less than persuasive on this issue." On July 30, respondent filed a motion seeking a "default judgment" due to the defendants' alleged failure to answer or otherwise defend the action within 30 days after service of the complaint.

Apart from the fact that the defendants filed their motion to dismiss on the 30th day, and thus within the time allowed, Rule 2–613, pursuant to which the motion for default judgment was filed, does not permit a default judgment by reason of an untimely response, but only an order of default, which the defendant may move to vacate. A judgment by default may be entered only if such a motion is not filed or, if filed, is denied, and, even then, only after proof of damages. Respondent withdrew her appearance as counsel for the Berows on September 21, 2009, and, on October 30, through new counsel, the action was dismissed.

### Responses to Bar Counsel's Inquiries

On October 2, 2009, following receipt of the Berow complaint, Bar Counsel requested a written response, which respondent provided. In her response, accompanied by numerous documents, respondent asserted her version of what had occurred, a version that largely was found by Judge Cahill not to be credible. Documents that respondent claimed that she had filed Judge Cahill found had never been filed and had been manufactured. With reference to the dispute over whether respondent had ever contacted Ms. Ong regarding the Sinai action, Judge Cahill found that respondent appeared to have made a false statement to Bar Counsel and then "dug in when confronted with contrary proof." He added that "[t]his is a pattern of behavior that Respondent repeated throughout these proceedings." We need not address all of the inconsistencies and apparent misstatements, but only the most important of them.

Respondent claimed that she had filed a response to Sinai's motion to dismiss and, indeed, had hand-carried the response to the clerk's office. Ms. Ong denied having received such a response and the court's file and docket entries fail to show any such response. After several requests, respondent, on March 2, 2010, sent Bar Counsel a copy of a document that purported to be such a response. A cursory examination revealed that the document was merely a partial reprint of the complaint filed by respondent and not what it purported to be.

Judge Cahill found that respondent "fabricated" the document after Bar Counsel made inquiry into her conduct.

In response to Bar Counsel's inquiry regarding the fees respondent received, respondent claimed that she deposited into her escrow account a cash payment of $400 received from Ms. Berow on July 2, 2009, and a $1,000 cash payment received from her on July 16, 2009. When asked for documentation, she submitted "an adulterated copy of a portion of a bank statement" and "a redacted copy of a bank deposit slip," and represented that they were associated with the deposits to her escrow account. All references to the identity of the account were blacked out. When Bar Counsel subpoenaed the original records from the bank, it became clear that neither the $400 nor the $1,000 had been deposited in the escrow account, but rather had been deposited into her operating account and that one of the deposits was not of cash received from Ms. Berow but a check received from another client. Judge Cahill found that respondent had fabricated the documents "in an effort to persuade Bar Counsel that she had escrowed the $1,400 in cash paid by Ms. Berow." In viewing this evidence in regard to the claimed violations of MLRPC 8.1 and 8.4, Judge Cahill concluded:

"The Petitioner has established by clear and convincing evidence that the Respondent made false statements to Bar Counsel that she had deposited monies she received from the Berows and into her escrow account. Moreover, the evidence is clear and convincing that the Respondent altered bank deposit slips and submitted them to Bar Counsel, representing them to be of her escrow account to support her misrepresentations. Her misrepresentations to Bar Counsel were willful in that she had to purposefully obscure the bank account numbers and the account titles, which were clearly those of her operating account. With respect to the Berows' monies, the Respondent never corrected any misapprehension that Bar Counsel may have had that the redacted statements and deposit slips were those of her escrow account."

As noted, on this evidence Judge Cahill found violations of MLRPC 1.1 (competence), 1.3 (diligence), 1.4(b) (explaining a matter to allow client to make informed decision), and 1.7 (conflict of interest), 1.15 and Rule 16–607 (safekeeping property and commingling funds), 8.1 (knowingly making false statement of material fact, failure to respond to lawful demand for information by Bar Counsel), and 8.4(c) and (d) (conduct involving dishonesty or misrepresentation, conduct prejudicial to administration of justice).

### *Judge Cahill's Findings Regarding Mughal Complaint*

Makbul Mughal retained respondent on April 4, 2009 in connection with an action against a former tenant. He signed a retainer agreement under which, for a flat fee of $1,750, respondent would file one or more writs of garnishment to enforce a judgment Mr. Mughal had obtained against the tenant and would file a separate action against the tenant for damage done to the property. In accordance with the agreement, Mr. Mughal paid $875 of the fee on April 4; he was to pay the other half by the end of the month.

Mr. Mughal, or his son on his behalf, called on several occasions to inquire whether the garnishments and the lawsuit had been filed. On April 21, 2009, respondent told the son that she had filed garnishments against all three of the tenant's employers and also had filed the lawsuit. The next day, she reported that one employer had been served but that the other two and the tenant himself had not been served and could not be found. Several further inquiries in May and June elicited no helpful information. Finally, on June 3, 2009, in response to a request for copies of the writs of garnishment and complaint, respondent terminated her representation. At that point, no lawsuit had been filed against the tenant and there was no evidence that any of the writs of garnishment had been issued or served. Mr. Mughal never paid the remaining $875.

On July 7, 2009, Mr. Mughal sent copies of his correspondence with respondent to Bar Counsel, who regarded it as a complaint and, on July 16, requested a written response from

respondent. In her response, respondent advised, among other things, that she had deposited Mr. Mughal's check for $875 in her escrow account, that she used the money "for court costs, etc." and that she was entitled to the funds. She claimed that she did not receive the paperwork necessary to file the lawsuit until April 14 and that, with respect to the writs of garnishment, she was unable to serve "the defendant." In response to further inquiries from Bar Counsel, she asserted that the writs of garnishment she had prepared had been sent to Mr. Mughal and, for that reason, were not in the client file she had forwarded to Bar Counsel.

In a letter to Bar Counsel dated January 28, 2010, respondent stated that it was the policy of her office to cash all client checks at the drawee bank and then deposit the cash into either her escrow or operating account. She enclosed a deposit slip dated April 7, 2009 showing a deposit of $1,300 and claimed that the cash proceeds from Mr. Mughal's check were part of that deposit. Respondent had altered the deposit slip with a black pen so that the account name and number were not visible.

Upon Bar Counsel's demand, on February 22, 2010, she sent an unadulterated copy of the deposit slip and asserted that the deposit had been made to her operating account because it had to be used to pay direct expenses for the client in short order. She also sent copies of blank checks on her operating and escrow accounts. The documents indicate, and Judge Cahill found, that the unredacted deposit slip involved an account that was neither respondent's operating or escrow account, but rather appeared to be a personal checking account.

On the evidence before him. Judge Cahill found that Bar Counsel had failed to prove most of the charges emanating from the Mughal case, including alleged violations of MLRPC 1.1 (competence), 1.2 (failure to abide by client decisions, acting without authorization), 1.3 (diligence), or 1.4 (communication with client). He also concluded that, as Bar Counsel had failed to charge a violation of MLRPC 1.15 (safekeeping

property) or Rule 16–607 (commingling funds) with respect to the payment by Mr. Mughal, he was unable to find a violation of those provisions. With respect to the alleged violations of MLRPC 8.1 (knowingly making false statement of material fact in connection with disciplinary matter) and 8.4(c) and (d) (conduct prejudicial to the administration of justice, conduct involving dishonesty, fraud, deceit, or misrepresentation), however, Judge Cahill found:

(1) From the beginning of the investigation through the evidentiary hearing, respondent "failed to be forthright and knowingly made numerous false statements of material fact."

(2) Respondent was "egregiously dishonest with Bar Counsel regarding her escrow account generally," first telling Bar Counsel that she had deposited Mr. Mughal's check into her escrow account, in support of which she submitted adulterated bank documents, then claiming that the check was deposited in her operating account, which also was untrue.

(3) In contrast to her statement that it was her policy to cash all client checks at their respective banks and then deposit the cash into one of her accounts, bank documents showed that, in February 2008, February 2009, June 2009, December 2009, February 2010, and March 2010, client checks were deposited directly into her escrow account.

(4) Documents submitted to Bar Counsel showing sample activity on respondent's escrow account were false. They purported to show two cash deposits of $274, one for "Carberry" and one for "Jenis," a total of $548, when the bank records subpoenaed by Bar Counsel showed that the $548 deposit consisted of $298 in cash and a check for $250 from "Waldvogel."

(5) In general, "[r]espondent's commitment to hiding the truth from Bar Counsel was systematic and unwavering."

### The Exceptions

Through her attorney, Harold Link, respondent filed 41 pages of exceptions to Judge Cahill's findings and conclusions. Respondent complains about the discovery process, about

scheduling, and about evidentiary rulings. Mostly, she complains that Judge Cahill did not believe her submissions, explanations, and testimony but concluded, instead, that Ms. Berow and Mr. Mughal were the more credible witnesses. Ignoring clear and recent case law to the contrary, she posits, as a proposition of law, that, where the testimony is in conflict, it cannot be clear and convincing.[3]

In *Attorney Grievance v. Khandpur*, 421 Md. 1, 13, 25 A.3d 165, 172 (2011), we confirmed prior holdings that, in an attorney disciplinary proceeding, the hearing judge "may elect to pick and choose which evidence to rely upon" because he or she "is in the best position to assess first hand a witness's credibility," quoting from *Attorney Grievance v. Harris*, 366 Md. 376, 388–89, 784 A.2d 516, 523 (2001); *Attorney Grievance Comm'n v. Kemp*, 303 Md. 664, 675, 496 A.2d 672, 677 (1985); and *Attorney Grievance Comm'n v. Sheridan*, 357 Md. 1, 17, 741 A.2d 1143, 1152 (1999).

In *Harris*, and more recently in *Attorney Grievance v. Smith*, 405 Md. 107, 123–24, 950 A.2d 101, 110 (2008), we also confirmed that "clear and convincing" evidence means only that "the witnesses to a fact must be found to be credible, and that the facts to which they have testified are distinctly remembered and the details thereof narrated exactly and in due order, so as to enable the trier of the facts to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue."

Respondent's flawed notion permeates, and dooms, almost all of respondent's exceptions. With respect to each material conflict, whether in the testimony of the witnesses or in

---

**3.** She, or Mr. Link, asserts that "this is nothing more than a case of one person's word against another and there is no basis whatsoever for Cahill to determine by clear and convincing evidence that Respondent engaged in the slightest degree of misbehavior.... Perhaps the most absurd of Cahill's statements is his attempt to deem the mere testimony of Mrs. Berow as 'clear and convincing,' apparently because he says it is. This is not the definition of 'clear and convincing,' and Cahill's attempt to transform mere unsupported testimony by one party, which is directly controverted by another party, into 'clear and convincing' evidence should be greeted with the contempt it deserves."

respondent's varying explanations of documents supplied to Bar Counsel, either by her or by the bank directly—documents that, on their face, belied her explanations—Judge Cahill set forth the conflicting views, announced his credibility determinations, explained why he chose to believe Ms. Berow's and Mr. Mughal's versions of what occurred and not to believe respondent's version, and why he found respondent's shifting and inconsistent explanations of adulterated documents unworthy of belief. We find no error of law and no abuse of discretion with respect to those rulings.

Respondent complains that certain bank records obtained by Bar Counsel that helped to demonstrate the falsity of her representation that the fees advanced by the Berows and Mr. Mughal had been deposited to her escrow account should not have been admitted because Bar Counsel failed to comply with the requirements of Rule 5–902(b), dealing with authentication of business records. There was, in fact no compliance with the certification requirement of that Rule, and, notwithstanding that those records were produced at respondent's deposition and she was examined about them, they should not have been admitted into evidence. We do not agree with respondent, however, that the error was so egregious as to require dismissal of Judge Cahill's finding that respondent submitted false and misleading documents to Bar Counsel and knowingly misstated that the funds had been deposited to her escrow account. There was ample other evidence, including from the adulterated documents she submitted, to support Judge Cahill's conclusions in that regard.

The one finding that did rest on a shaky foundation was that respondent had a potential conflict of interest in representing the Berows in both the bankruptcy case and the action against Sinai Hospital and Ms. Bongiovanni. The precise nature of that conflict in terms of MLRPC 1.7 was never clearly explained. Respondent conceded that there was a potential conflict under bankruptcy law, at least to the point that she would have needed consent from the bankruptcy

court to continue in both capacities, but argued that there was no conflict under MLRPC 1.7.

At the hearing, the dispute centered on whether the Berows were informed of the conflict, whatever it was. On disputed evidence, Judge Cahill chose to believe Ms. Berow that she was never told about it until after the first petition had been withdrawn and the second one was under discussion, which he had a right to do. We are not convinced that the record demonstrates a real or potential conflict of interest under MLRPC 1.7, however, and therefore shall sustain the exception to that finding.

As we find no merit to the other exceptions, we shall deny them.

### *Sanction*

■ The heart of respondent's derelictions is not in the violations of MLRPC 1.1, 1.3, or 1.4(b), but in 8.1 and 8.4—the deliberate submission of false, adulterated documents intended to cover up the other violations. As noted, Judge Cahill concluded that her commitment to hiding the truth from Bar Counsel was "systematic and unwavering," that it was not the product of mere mistakes, and that "there is no innocent explanation for the fabrication of documents, or the alteration of bank records after Bar Counsel began its investigation." The record supports Judge Cahill's conclusion that respondent "engaged in pattern of obfuscation, deceit and dishonesty since first being contacted by Bar Counsel."

The appropriate sanction for that kind of behavior ordinarily is disbarment. *See Attorney Grievance v. Keiner*, 421 Md. 492, 523, 27 A.3d 153, 172 (2011) (when "it appears that the attorney has engaged in intentional dishonest conduct . . . disbarment will be the appropriate sanction absent 'compelling extenuating circumstances' "), quoting from *Attorney Grievance v, Palmer*, 417 Md. 185, 207, 9 A.3d 37, 50 (2010); also *Attorney Grievance v. Pak*, 400 Md. 567, 609–10, 929 A.2d 546, 571 (2007). Judge Cahill found no compelling extenuating circumstances; nor do we. Disbarment is the sanction.

### *The Unprofessional Articulation Of The Exceptions*

■ Having overruled all but one of respondent's exceptions and determined that disbarment is the appropriate sanction, we would ordinarily end our discussion. Given the unprecedented lack of common respect and decency with which respondent, through her attorney, Mr. Link, has chosen to present the exceptions, however, some additional comments are in order.

In presenting legal argument, there is a proper place for passion and, indeed, for the panoply of literary devices designed and appropriate to give power, force, and clarity to the argument. In a case certainly familiar to Mr. Link, however, this Court confirmed that there are some limits, that "attorneys are required to act with common courtesy and civility at all times in their dealings with those concerned with the legal process." *Attorney Grievance v. Link*, 380 Md. 405, 425, 844 A.2d 1197, 1209 (2004). More recently, by its adoption of Ideals of Professionalism, we have explained that lawyers are constrained by certain precepts of professionalism, which "require[ ] civility in all dealings, showing respect for differing points of view, and demonstrating empathy for others" and an understanding that "a lawyer can advocate zealously a client's cause in a manner that remains fair and civil."

Those precepts were utterly ignored in the drafting and filing of respondent's exceptions, which can best be characterized as unjustified and unprofessional personal attacks on Judge Cahill, on the Assistant Bar Counsel who prosecuted the case, and on the complaining clients.

The tone of the attacks on Judge Cahill is set by referring to him throughout the exceptions, except in one place, as simply "Cahill"—not Judge Cahill. This was noted by the Court at oral argument and simply brushed aside with cavalier indifference by Mr. Link. More important, aside from the lack of the respectful honorific, respondent and Mr. Link have gone beyond simply asserting errors in various rulings and, without any justification, essentially have accused Judge Cahill of incompetence and worse. In complaining about the overruling

of his objection to the admission of certain documents—an objection that actually had merit—instead of simply pointing out the error and arguing its significance, they state that

> "[a]fter testily looking into his copy of the Rules to view this particular Rule with which he was obviously a complete stranger, Cahill then conferred with Lee [Marianne Lee, Assistant Bar Counsel] who was also a complete stranger to this Rule, and the two of then decided that since Lee had referred to these statements at [respondent's] recent deposition that she was in compliance with the Rule. . . . "

The record, they assert, is "replete with numerous cowardly, degrading, personal insults" on the judge's part. Judge Cahill is accused of exhibiting "contempt for the discovery process," treating respondent's complaints "with undisguised scorn," and "pervert[ing]" respondent's testimony, none of which is even remotely borne out by the record. They add that "the entire Chapter 800 of the Maryland Rules of Procedure took a vacation during this hearing. Cahill let it be known that he had his own personal rule which substituted for Chapter 800."[4] The case, they say, is "a case study in what occurs when a trial judge mindlessly sucks down material that is spoon-fed to him in a Proposed Order and then regurgitates it into his own Order without even bothering to check its accuracy," for which there also is no support in the record.

Ignoring the fact that Judge Cahill made a clear determination that Ms. Berow was credible and that respondent was not, they assert that "Mrs. Berow's conduct was fraudulent and duplicitous—she never rebutted any of the allegations Respondent made regarding her blatant dishonesty in trying to palm off the damages to the vehicle off on an innocent tow truck driver." Later, they refer to the Berows as "scoundrels." Their aspersion of Ms. Berow, if anything, was exceeded by

---

4. It is not clear what they were referring to. There is no Chapter 800 of the Maryland Rules. There is a Chapter 800 to the Title 5 Rules of Evidence, which deals with hearsay, and there is a Chapter 800 to the Title 16 Rules governing attorney discipline. There is no evidence in the record that either chapter "took a vacation."

their characterization of Mr. Mughal and his son as "two very sleazy characters."

This kind of wholly unwarranted character assassination violates the very core of professionalism and is condemned. Mr. Link was admonished once before by this Court for that very kind of behavior, *see Attorney Grievance v. Link, supra,* 380 Md. at 429–30, 844 A.2d 1197 at 1212, but he apparently has learned nothing from that experience.

**EXCEPT AS TO MLRPC 1.7, EXCEPTIONS OVER-RULED AND RESPONDENT IS DISBARRED; IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING COSTS FOR ALL TRANSCRIPTS, PURSUANT TO MA-RYLAND RULE 16–761, FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEV-ANCE COMMISSION AGAINST MICHELE L. PAYER; ORDER TO TAKE EFFECT UPON FILING.**