*39 WATTS, J.,
concurring and dissenting, in which HARRELL and BATTAGLIA, JJ., join.
Respectfully, I concur and dissent.[1] This attorney discipline proceeding involves a lawyer who displayed an egregious lack of diligence and candor in his capacity as an Assistant State’s Attorney representing the State in a prosecution against a defendant charged with committing crimes against a child. Under this attorney discipline proceeding’s unique circumstances, without hesitation, I would hold that the hearing judge’s finding that Bruce Michael Smith (“Smith”), Respondent, was credible is not entitled to deference from this Court and that clear and convincing evidence established that Smith violated Maryland Lawyers’ Rules of Professional Conduct (“MLRPC”) 3.3(a)(1) (Candor Toward the Tribunal) and 8.4(c) (Dishonesty, Fraud, Deceit, or Misrepresentation).
BACKGROUND
Because the decision not to defer to the hearing judge’s credibility finding is based, in large part, on the many facts of the case that amply demonstrate Smith was credible neither in the underlying criminal prosecution before the circuit court nor in the hearing before the hearing judge, I summarize the hearing judge’s findings of fact.
On December 16, 1999, this Court admitted Smith to the Bar of Maryland. During the time period relevant to this attorney discipline proceeding, Smith was an Assistant State’s Attorney for the Office of the State’s Attorney for Harford County, Maryland. Joseph I. Cassilly (“Cassilly”) had been the State’s Attorney for Harford County since 1983; and, in 2007, Cassilly hired Smith as an Assistant State’s Attorney.
In August 2007, Smith was assigned to prosecute cases handled by the Harford County Child Advocacy Center (“the *40 CAC”). The CAC had been established to handle cases involving child sexual assault and abuse, child pornography, and internet solicitation of children. The CAC is staffed by prosecutors, victim/witness advocates, a forensic interviewer, child protective service workers, and sheriffs detectives.
On or about March 31, 2009, Nathan Head (“Head”) was indicted for sexual abuse of a minor and fourth-degree sex offense. As part of his duties with the CAC, Smith was assigned to prosecute Head in the Circuit Court for Harford County (“the circuit court”), beginning with grand jury proceedings. As was the practice of the Office of the State’s Attorney for Harford County, a file was created and maintained for Head’s prosecution.
On April 9, 2009, David Henninger (“Henninger”) entered his appearance on behalf of Head. The prosecution file included Henninger’s entry of appearance, the State’s and Head’s discovery requests, and the State’s responses to Head’s discovery requests. Smith signed the State’s responses, which included a list of potential witnesses, identifying the following people as potential witnesses: (1) the child victim (“the victim”) by the victim’s initials; (2) the victim’s adult guardian; (3) Detective Thomas Bradley; and (4) Leanda Daniels, a social worker with the CAC. In the State’s discovery responses, contact information was provided for all of the witnesses except for the victim.
On or about April 30, 2009, Smith received notice that Head’s trial was scheduled for September 8, 2009. On September 8, 2009, Smith appeared on behalf of the State in the circuit court and requested a postponement, advising the circuit court that the victim’s guardian, a necessary witness, was unavailable. Specifically, Smith stated: “I have a witness who is necessary for the case who is not available at this time.” When asked by the circuit court to elaborate, Smith stated: “[I]t’s my understanding [ ] that ... [the victim’s guardian], is absent at this time, out of town, and apparently it’s some kind of medical emergency, I believe in Connecticut, Your Honor. I don’t have my note with me. She is a *41 necessary, critical witness in this case, therefore, the State is seeking postponement. There has been no other dates before this, Your Honor.” The circuit court granted the postponement, stating: “For the matter stated by the State, that a critical witness is unavailable here today, this matter will be postponed for that reason. I find the reason constitute^] good cause.”
Trial was rescheduled for January 4, 2010. On that date, Head pled guilty to fourth-degree sex offense. The circuit court sentenced Head to one year of imprisonment, with all but 142 days suspended and credit for time served, followed by three years’ probation. Importantly, as a condition of probation, Head was to have no contact, by any means, with the victim. At sentencing, Smith did not offer the circuit court a victim impact statement or any other information from the victim or the victim’s family.
In 2012, the Division of Correction contacted the Office of the State’s Attorney for Harford County concerning Head’s release. The Division of Correction was unable to locate contact information to notify the victim of Head’s release, so the Office of the State’s Attorney agreed to contact the victim’s guardian. As a result, the Office of the State’s Attorney discovered, among other things, that the victim’s guardian was unaware that Head had pled guilty and been sentenced; she had been unaware of the September 8, 2009 trial date, and had never advised that she was out-of-state; and, for that matter, she was unaware that Head had ever been charged. Upon this discovery, the prosecution file was reviewed; the prosecution file contained a notation that the September 8, 2009, postponement was due to the victim’s unavailability. Thereafter, transcripts of the September 8, 2009, hearing and the January 4, 2010, guilty plea hearing were ordered.
On or about March 21, 2012, Cassilly confronted Smith about the request for postponement and the information obtained from the victim’s guardian (ie., that she was not aware that Head had been charged, that she had never contacted *42 anyone with regard to traveling out-of-state for a medical emergency, and that she had not, in actuality, traveled out-of-state for a medical emergency). Cassilly told Smith he had concerns about his lack of candor in requesting the postponement and requested Smith’s resignation. Cassilly could not recall Smith offering an explanation other than that a note should have been in the prosecution file. Cassilly looked for, but did not find, a note in the prosecution file relating to the unavailability of the victim’s guardian or the information that Smith provided to the circuit court on September 8, 2009. After his meeting with Cassilly, Smith’s employment as an Assistant State’s Attorney was terminated.
In addition to the issues related to the September 8, 2009 postponement request, Cassilly discovered nothing in the prosecution file indicating that the victim had been summonsed for either circuit court date; and neither the prosecution file nor the circuit court’s file contained a copy of the Victim Notification Request form that Maryland law requires.[2] In addition, neither the prosecution file nor the circuit court’s file contained a form certifying that the victim had been notified of her rights; filing such a certification form was Smith’s responsibility. According to Cassilly, it was Smith’s responsibility to meet with the victim prior to trial, introduce himself, establish a relationship with the victim, and know how the victim would handle questions or respond on the stand; but, the prosecution file contained no notes concerning a pretrial interview with the victim by Smith. The prosecution file contained a statement given by the victim to a social worker at the CAC *43 on February 20, 2009, which was audio and video taped;[3] and, according to Cassilly, it was customary to use such a recording at trial. Although it was Smith’s responsibility to file a motion in the circuit court concerning the State’s intention to use the recording at trial, Smith failed to do so.
It was also Smith’s responsibility to see that subpoenas/summonses were issued to witnesses to appear for trial. The usual practice of the Office of the State’s Attorney for Harford County was as follows. Although witnesses were occasionally notified about other types of hearings by telephone or by letter, the assigned Assistant State’s Attorney typically sent a summons and followed up by letter. The summonses/subpoenas are computer-generated. The clerical staff at the Office of the State’s Attorney for Harford County enter a date into the computer system; the computer searches for all cases that are scheduled for that date; and a batch of the subpoenas/summonses for that date is printed. Thereafter, the clerical staff separate the summonses, attach them to the front of the prosecution file, and give them to the assigned Assistant State’s Attorney for signature. The process allows the assigned trial attorney to review the summonses/subpoenas already issued and to make sure that all of the witnesses needed for the trial date were issued a summons/subpoena. If Smith received the prosecution file in Head’s case and realized there were no summons/subpoena for a necessary witness, Smith could have had a summons/subpoena issued for that witness prior to trial.
Pursuant to the procedure described above, the prosecution file and the circuit court’s file contained copies of subpoenas signed by Smith for the September 8, 2009, trial date. The subpoenas, issued on August 8, 2009, were addressed to Head and Detective Thomas Bradley of the Harford County Sheriffs Department. There were no copies of subpoenas for the victim or her guardian for either trial date. It was Smith’s responsibility, as the assigned Assistant State’s Attorney, to *44 keep the victim and her guardian informed of the proceedings, but the prosecution file contained no notes or other records of any communications with the victim or members of her family between the September 8, 2009, trial date and the January 4, 2010, trial date.
After the circuit court proceeding on January 4, 2010, at which Head pled guilty, Smith did not communicate with the victim or her guardian. And, although one of the conditions of Head’s probation was that he have no contact, by any means, with the victim, there was no record that Smith or anyone else contacted the victim or her guardian concerning the case’s disposition and the condition of probation imposed. At the hearing, Cassilly testified that, generally, the assigned Assistant State’s Attorney communicates with the victim concerning the case’s disposition. Barring that, the Office of the State’s Attorney for Harford County has a system under which, if the victim is not present, a letter detailing the case’s disposition is sent to the victim and/or the CAC victim’s advocate contacts the victim. At the disciplinary hearing, Smith admitted that he was responsible for notifying the victim and/or the victim’s guardian concerning the conditions of Head’s probation, but that he failed to do so.
The victim’s guardian testified that, after the victim gave a recorded statement on February 20, 2009, she heard nothing from the CAC or the Office of the State’s Attorney about the allegations against Head. The victim’s guardian did not attempt to contact anyone about the allegations against Head because she got caught up in other matters, and assumed that the victim had not been believed and that the matter had been dropped. According to the victim’s guardian, in 2012, she was contacted by someone about Head, and, as a result, discovered that Head had been prosecuted. The victim’s guardian testified that, had she been contacted in 2009, she would have cooperated in the prosecution. The victim’s guardian also testified that she would have liked to have known that Head had been prosecuted. The victim’s guardian testified that she did not leave a telephone message for anyone in the Office of the State’s Attorney for Harford County advising that she was *45 unable to attend a hearing or that she was out-of-state for a medical emergency.
The hearing judge expressly found Cassilly and the victim’s guardian credible.
At the hearing, Smith testified that he had no independent recollection of the case, and had refreshed his recollection by reviewing the transcript and other documents. Smith admitted responsibility for a lack of due diligence in handling the case. Smith testified, however, that he would not have fabricated an excuse for a postponement and he believed that his communication to the circuit court regarding the victim’s guardian’s absence was not untrue. Smith did not dispute the validity of the underlying fact — ie., the victim’s guardian had not traveled out-of-state — but testified that he believed that what he stated on the record was not fabricated. During cross-examination, Smith testified that, at the relevant time, he had a heavy case load and had requested that his District Court case load be reduced so he could devote more time to his assigned CAC case load. The hearing judge found that Smith “appeared credible, genuine, and truthful” when testifying at the hearing.
On November 10, 2014, we heard oral argument. In opening argument, Smith urged this Court to adopt the hearing judge’s findings of fact and conclusions of law, and submitted. In response to questions posed by Chief Judge Mary Ellen Barbera, Smith recommended that we reprimand him. In rebuttal argument, Smith again asked this Court to adopt the hearing judge’s findings of fact and conclusions of law. In response to questions from the Court, Smith stated that he made the postponement request in the circuit court based on the information that he had at the time, and that, in any event, the Head case was not going to proceed to trial on September 8, 2009. When asked when he knew the case would not proceed to trial, Smith stated that his “guess” was “probably” weeks prior to the September 8, 2009, trial date, although Smith acknowledged that he had not seen the file between *46 2009 and 2012, and that he had not testified before the hearing judge concerning the case not proceeding to trial.
Smith also stated that he did not know whether he had testified about when he learned that Head was going to plead guilty, but believed he had not testified about it because he did not know the date. Smith again admitted that he did not have any independent recollection of the case. When asked how this Court could reconcile the hearing judge’s findings that both Smith and the victim’s guardian were credible, Smith responded that he “testified to the truth” and that, “when asked how that note came about,” he “explained that, obviously, someone had left it on [his] desk and that’s what [he] presented to the [circuit] court.” Smith maintained that “the note was the only information [that he] had,” and that he “accepted responsibility for not following up” to verify the information contained in the note before presenting it to the circuit court.
And, in contrast to his testimony, in which he acknowledged that contacting the victim after the guilty plea was his responsibility, Smith advised us that it was the responsibility of a victim-witness coordinator to contact the victim’s guardian and advise her of the guilty plea and the condition that Head have no contact with the victim. Smith stated that he “accepted responsibility for” not following up to make sure that the victim-witness coordinator contacted the victim. In response to a question as to whether the record contained any information about the victim-witness unit and how it functions, Smith stated: “No, I don’t believe so.” Smith conceded that he had no basis in this Court’s jurisprudence for recommending a reprimand as the appropriate sanction.
DISCUSSION
Maryland Rule 16 — 759(b)(2)(B) provides, in relevant part: “If exceptions are filed, the Court of Appeals shall determine whether the findings of fact have been proven by the requisite *47 standard of proof set out in Rule 16-757(b).[4] ... The Court shall give due regard to the opportunity of the hearing judge to assess the credibility of witnesses.” We accept a hearing judge’s proposed findings of fact, unless clearly erroneous, and have explained that “[t]his deferential standard of review is in place because the hearing judge is in the best position to assess the credibility of witnesses and parties.” Attorney Grievance Comm’n v. Walker-Turner, 428 Md. 214, 226, 51 A.3d 553, 560 (2012) (citations omitted); see also Attorney Grievance Comm’n v. London, 427 Md. 328, 343, 47 A.3d 986, 995 (2012) (“We accept a hearing judge’s findings of fact unless we determine that they are clearly erroneous. That deference is appropriate because the hearing judge is in a position to assess the demeanor-based credibility of the witnesses.” (Citation omitted)).
We have stated that “[wjeighing the credibility of witnesses and resolving any conflict in the evidence are tasks proper for the fact finder.” Attorney Grievance Comm’n v. Marcalus, 414 Md. 501, 512, 996 A.2d 350, 356 (2010) (citation and internal quotation marks omitted) (alteration in original). Accordingly, “in an attorney discipline proceeding, the hearing judge may elect to pick and choose which evidence to rely upon because he or she is in the best position to assess first hand a witness’s credibility!)]” Attorney Grievance Comm’n v. Payer, 425 Md. 78, 93, 38 A.3d 378, 387 (2012) (citations and internal quotation marks omitted). We have also explained “that ‘clear and convincing evidence’ means only that the witnesses to a fact must be found to be credible, and that the facts to which they have testified are distinctly remembered and the details thereof narrated exactly and in due order, so as to enable the trier of the facts to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue.” Id. at 93, 38 A.3d at 387 (citation and internal quotation marks omitted).
*48 A careful review of our existing jurisprudence leads to the conclusion that we are not required to accept a hearing judge’s credibility finding in lockstep where there is good reason to doubt the finding and the record contains facts that contradict the finding. Although it is accurate that weighing witness credibility is the job of the hearing judge and that we generally defer to such findings, our jurisprudence has always allowed for the possibility that there would be a case in which the hearing judge’s credibility finding would be clearly erroneous.
In Attorney Grievance Comm’n v. Sheinbein, 372 Md. 224, 248, 812 A.2d 981, 995 (2002), this Court determined that a lawyer “had the specific intent to obstruct or hinder [an] investigation and probable arrest of his son by sending [his son] to Israel.” In so concluding, we first evaluated the hearing judge’s finding concerning the lawyer’s credibility to “determine whether those findings [we]re clearly erroneous.” Id. at 245, 812 A.2d at 993. We observed that the hearing judge had found that the lawyer was not credible when he testified before a Grand Jury that his intent in sending his son to Israel was to save his son from another individual, suicide, or a police shootout. Id. at 245, 812 A.2d at 993. Upon independent review, we stated that “[t]he record [wa]s replete with facts” supporting the hearing judge’s credibility finding. Id. at 245, 812 A.2d at 993.
And, in London, 427 Md. at 350-51, 47 A.3d at 999-1000, we concluded that a lawyer violated MLRPC 8.4(c) by making misrepresentations or failing to communicate a material fact about the status of work that he had completed for a client. Before the hearing judge, the client testified that the lawyer had told him that a deed had been filed. Id. at 350, 47 A.3d at 999. By contrast, the lawyer testified that the agreement with the client was that the lawyer would prepare the deed, but that the client would file the deed. Id. at 350, 47 A.3d at 999. Ultimately, no deed was filed. Id. at 349, 47 A.3d at 999. The hearing judge found the client credible, and found the lawyer “not as credible[.]” Id. at 335, 47 A.3d at 990. In concluding that the lawyer violated MLRPC 8.4(c), we stated: ‘With no reason to doubt the hearing judge’s finding that [the client] *49 was a more credible witness than [the lawyer], we conclude that the evidence is plainly sufficient to support a violation of [MLRPC] 8.4(c).” Id. at 351, 47 A.3d at 1000 (footnote omitted).
Here, there are myriad good reasons to doubt the hearing judge’s credibility finding as to Smith, and the record is overflowing with facts that contradict the hearing judge’s finding. Indeed, the hearing judge’s own findings of fact compel the conclusion that Smith was not credible, and that he misled the circuit court in representing that a critical witness was unavailable for trial due to traveling out-of-state for a medical emergency.
There were a number of unusual circumstances accompanying Smith’s request for a postponement in the circuit court on September 8, 2009. The hearing judge found that, during the circuit court proceeding, Smith stated that a witness, the victim’s guardian, was unavailable, “absent ..., out of town, and apparently it’s some kind of medical emergency, ... in Connecticut,” but that he did not “have [his] note with [him].” Smith did not produce the alleged note in the circuit court, and Smith did not advise the circuit court of how he came into possession of a note regarding the victim’s guardian’s unavailability when he had neither contacted the victim’s guardian to advise her of the trial date nor summonsed her to appear as a witness. Nor was the note placed in the prosecution file.
Several years later, when Cassilly received conflicting information concerning the postponement request — i.e., the information that Cassilly had obtained from the victim’s guardian (that she was not aware that Head had been charged, that she had never contacted anyone with regard to traveling out-of-state for a medical emergency, and that she had not, in actuality, traveled out-of-state for a medical emergency) — and met with Smith, Smith offered no explanation or details other than that a note should have been in the prosecution file. Cassilly looked for, but, contrary to Smith’s assurance, did not find, a note in the prosecution file relating to the victim’s guardian’s unavailability or a note regarding any information *50 provided by Smith to the circuit court on September 8, 2009. After Smith’s meeting with Cassilly, Cassilly terminated Smith’s employment with the Office of the State’s Attorney for Harford County. The logical conclusion is that Cassilly did not believe Smith’s account of the September 8, 2009, postponement request before the circuit court.
Compounding the irregularities attendant to the September 8, 2009, postponement request, at the hearing, Smith testified that he had no independent recollection of the case, but that “he would not have fabricated such an excuse” to the circuit court and that he believed what he told the circuit court regarding the victim’s guardian’s absence “was not untrue.” In short, before the hearing judge, Smith simply testified that he would not have been untruthful about receiving the note. It is undisputed, however, based on the hearing judge’s findings of fact, that Smith never contacted the victim’s guardian to inform her of the prosecution or of either the September 8, 2009, or January 4, 2010, trial dates. Specifically, the victim’s guardian testified that nobody from the Office of the State’s Attorney for Harford County had ever been in touch with her, not even to inform her that Head was being prosecuted. At the hearing, Smith acknowledged that it was his responsibility to notify the victim and her guardian about the prosecution and trial dates, but that he failed to do so. Yet, oddly, Smith failed to provide any explanation whatsoever as to why he would have unexpectedly received a note about the unavailability of a critical witness — the victim’s guardian — whom, as he knew, he had not contacted to inform of the prosecution or of the particular trial date.
Although Smith has offered the explanation that he would not have fabricated an excuse for a postponement and that he believes his communication with the circuit court regarding the victim’s guardian’s absence was not untrue, simply put, the evidence admitted at the disciplinary hearing does not support Smith’s allegation. Based on the evidence, there are only two logical explanations for Smith’s position — either the victim’s guardian was not truthful concerning her lack of contact with the Office of the State’s Attorney for Harford County, or, in *51 September 2009, Smith came into possession of a note unrelated to Head’s case that he mistook as pertaining to the victim’s guardian. As to the first possibility, the hearing judge expressly found the victim’s guardian credible, and nothing in the record casts a reasonable doubt on that finding; ie., the record presents no circumstances contradicting the victim’s guardian’s account that she was not contacted by the Office of the State’s Attorney for Harford County and did not know of Head’s prosecution. And Smith agrees that he did not contact the victim’s guardian. As to the second possibility, no evidence has been produced demonstrating that Smith received in error a note concerning the victim’s guardian’s absence or that Smith received a note pertaining to another matter or, for that matter, that a note pertaining to the victim’s guardian was misplaced in another prosecution file. In short, there is no scenario grounded in the evidence admitted at the hearing under which Smith’s version could be accurate.
Although this Court gives due regard to a hearing judge’s credibility finding, in the instant case, in the face of all of the countervailing evidence admitted at the hearing and in light of the hearing judge’s own findings of fact, this Court is not required to mindlessly accept the hearing judge’s unexplained finding that Smith was credible.[5] Under this attorney discipline proceeding’s unique circumstances, given the many good reasons to doubt Smith’s credibility and that the evidence, in actuality, contradicts a finding that Smith was credible, I would not defer to the hearing judge’s illogical finding concerning Smith’s credibility. Clear and convincing evidence requires not only that a witness be found to be credible, but *52 also “that the facts to which [the witness has] testified are distinctly remembered and the details thereof narrated exactly and in due order, so as to enable the [hearing judge] to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue.” Payer, 425 Md. at 93, 38 A.3d at 387 (citation and internal quotation marks omitted). Again, Smith neither testified as to any remembered facts nor provided any detail concerning the particulars of his prosecution of Head; to the contrary, Smith testified that he had no independent recollection of the matter.[6] In other words, nothing in Smith’s testimony could have led the hearing judge to come to find by clear and convincing evidence that Smith would not have misled the circuit court about the note.[7]
I would reverse the hearing judge’s conclusion that Smith did not violate MLRPC 3.3(a)(1) and 8.4(c). MLRPC 3.3(a)(1) provides that “[a] lawyer shall not knowingly: [ ] make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer[.]” (Paragraph break omitted). MLRPC 8.4(c) provides: “It is professional misconduct for a lawyer to ... engage in conduct involving dishonesty, fraud, *53 deceit!,] or misrepresentation!.]” Given the hearing judge’s findings of fact, I would conclude that Smith violated MLRPC 3.3(a)(1) and 8.4(c) by lying to the circuit court when making the postponement request. The hearing judge’s findings of fact are more than sufficient to demonstrate that Smith — who admitted that he had a heavy case load and had requested that his case load be reduced, and who failed to even inform the victim or her guardian of Head’s prosecution or of the initial trial date — fabricated an excuse for a postponement to cover up his complete lack of diligence in the handling of Head’s prosecution. In my view, there is no other reasonable or logical conclusion that can be reached given the hearing judge’s findings of fact, notwithstanding the hearing judge’s inexplicable credibility finding.
In accordance with the Commission’s recommendation at oral argument, I would indefinitely suspend Smith from the practice of law in Maryland with the right to apply for reinstatement no sooner than six months after the effective date of the suspension. Cf. Attorney Grievance Comm’n v. Litman, 440 Md. 205, 206, 217, 222, 101 A.3d 1050, 1052, 1057, 1058, 1061 (2014) (In a reciprocal discipline case, where, among other things, the lawyer “misrepresented intentionally facts and the law to both judicial and administrative tribunals” and “either made deliberately the misrepresentations at issue or blinded himself willfully to the falsity of his contentions!,]” this Court concluded that the appropriate sanction was an indefinite suspension with the right to apply for reinstatement no sooner than six months after the effective date of the suspension.). For the above reasons, respectfully, I concur and dissent.
Judge HARRELL and Judge BATTAGLIA have authorized me to state that they joined me in this opinion.

. I concur with the Majority’s conclusions that Smith violated Maryland Lawyers' Rules of Professional Conduct ("MLRPC”) 1.3 (Diligence), 8.4(d) (Conduct that is Prejudicial to the Administration of Justice), and 8.4(a) (Violating the MLRPC).

. Md. Code Ann., Crim. Proc. (2008 Repl. Vol.) § 11 — 104(c)(1) provides:
Within 10 days after the filing or the unsealing of an indictment or information in circuit court, whichever is later, the prosecuting attorney shall:
(i) mail or deliver to the victim or victim’s representative the pamphlet described in § 11 — 914(9)(ii) of this title and the notification request form described in § 11-914(10) of this title; and
(ii) certify to the clerk of the court that the prosecuting attorney has complied with this paragraph or is unable to identify the victim or victim’s representative.

. A document signed by the victim’s guardian consenting to the audio and videotaping of the victim’s statement was in the prosecution file.

. Maryland Rule 16-757(b) provides, in pertinent part, that the Attorney Grievance Commission “has the burden of proving the averments of the petition [for disciplinary or remedial action] by clear and convincing evidence.”

. As an aside, although the hearing judge found that Smith “appeared credible, genuine and truthful in testifying before” the hearing judge, the hearing judge did not explain, elaborate, or even mention a fact supporting the finding (i.e., the hearing judge did not state that the credibility determination was based on Smith’s demeanor or something else, nor did the hearing judge state that the credibility finding was confirmed by evidence admitted at the hearing). To be sure, hearing judges are permitted to make demeanor-based credibility findings. Here, however, overwhelming evidence contradicts the validity of such a finding concerning Smith's credibility.

. At oral argument, the Honorable Glenn T. Harrell, Jr. asked Smith whether he remembered the character Sergeant Schultz from the television show "Hogan's Heroes.” Smith responded: "Yes.” Judge Harrell pointed out that Sergeant Schultz’s catchphrase was "I know nothing,” which "seems to have been [Smith’s] defense before the [hearing] judge.” Given Smith’s testimony that he has no independent recollection of the case, Judge Harrell’s comparison is well-taken.

. And, disconcertingly, despite admitting at the hearing that it was his responsibility to notify the victim and/or her guardian of Head's guilty plea and conditions of probation, at oral argument, Smith advised that it would have been the responsibility of a victim-witness coordinator to contact the victim and/or her guardian concerning Head’s guilty plea. In other words, although, at the hearing Smith acknowledged his responsibility to contact the victim after the guilty plea, Smith changed his tune between the disciplinary hearing and oral argument, and decided that responsibility for contacting the victim after the guilty plea rested with a victim-witness coordinator. The conflicting information provided by Smith as to who was responsible for contacting the victim and/or her guardian following Head's guilty plea undermines the finding that Smith was credible.