790 A.2d 621

ATTORNEY GRIEVANCE COMMISSION OF MARYLAND

v.

**Samuel Joseph LANE.**

**No. Misc. AG 52, Sept. Term, 2000.**

Court of Appeals of Maryland.

Feb. 7, 2002.

Melvin Hirshman, Bar Counsel and Glenn M. Grossman, Deputy Bar Counsel for the Attorney Grievance Commission of Maryland, for petitioner.

Ramon Rozas, III, Esquire of Cumberland, for respondent.

Argued Before BELL, C.J., and ELDRIDGE, RAKER, WILNER, CATHELL, HARRELL, and BATTAGLIA, JJ.

CATHELL, Judge.

On January 17, 2001, the Attorney Grievance Commission of Maryland, petitioner, by Melvin Hirshman, Bar Counsel, and Glenn M. Grossman, Deputy Bar Counsel, filed a Petition for Disciplinary Action against Samuel Joseph Lane, respondent. The petition alleged that respondent, based on his representation of Lance D. Williams and Cheryl Lynn Bair, had violated Maryland Rules of Professional Conduct (MRPC) 1.1, 1.2(a), 1.3, 1.4, 1.5(c), and 8.4(a), (c), and (d).[1] This Court, by Order

---

1. The relevant MRPC state:

"**Rule 1.1. Competence.**
A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation.
**Rule 1.2. Scope of representation.**

dated January 18, 2001, transmitted the action to the Circuit Court for Washington County for that court to make findings of fact and conclusions of law. The Circuit Court held evidentiary hearings on May 14, 2001 and August 17, 2001.[2]

---

(a) A lawyer shall abide by a client's decisions concerning the objectives of representation, subject to paragraphs (c), (d) and (e), and, when appropriate, shall consult with the client as to the means by which they are to be pursued. A lawyer shall abide by a client's decision whether to accept an offer of settlement of a matter. In a criminal case, the lawyer shall abide by the client's decision, after consultation with the lawyer, as to a plea to be entered, whether to waive jury trial and whether the client will testify.

**Rule 1.3. Diligence.**

A lawyer shall act with reasonable diligence and promptness in representing a client.

**Rule 1.4. Communication.**

(a) A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.

(b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

**Rule 1.5. Fees.**

. . .

(c) A fee may be contingent on the outcome of the matter for which the service is rendered, except in a matter in which a contingent fee is prohibited by paragraph (d) or other law. The terms of a contingent fee agreement shall be communicated to the client in writing. The communication shall state the method by which the fee is to be determined, including the percentage or percentages that shall accrue to the lawyer in the event of settlement, trial or appeal, litigation and other expenses to be deducted from the recovery, and whether such expenses are to be deducted before or after the contingent fee is calculated. Upon conclusion of a contingent fee matter, the lawyer shall provide the client with a written statement stating the outcome of the matter, and, if there is a recovery, showing the remittance to the client and the method of its determination.

**Rule 8.4. Misconduct.**

It is professional misconduct for a lawyer to:

(a) violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;

. . .

(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;

(d) engage in conduct that is prejudicial to the administration of justice. . . ."

2. The May 14, 2001 hearing was continued because an agreement had been reached by the parties. The parties filed a Joint Petition for

On October 3, 2001, the Circuit Court for Washington County filed its Findings of Fact and Conclusions of Law. The record from the Circuit Court was then transferred to our Court for oral argument.

## I. Facts

On June 21, 1995, respondent was admitted to the Bar of Maryland. In February of 1996, respondent began practicing law as a sole practitioner with a focus on divorce, child support, and preparing wills. Respondent's previous legal experience was as a student in a law school clinic and as an intern with the Office of the State's Attorney for Montgomery County. In September of 1997, respondent closed his private practice to accept a position with the Public Defender's Office in Allegany County. While with the Public Defender's Office respondent was offered a position in the Office of the State's Attorney for Allegany County. Respondent joined the State's Attorney's Office in September of 1998 and he currently works for that office as a circuit court felony prosecutor.

The two complaints against respondent arose from his representation of clients while he was a sole practitioner. In its findings of fact, the Circuit Court for Washington County has done a complete job of summarizing the facts of the two complaints. We shall, therefore, quote the Circuit Court, which stated:

### *"Williams Case*

"Mr. Williams retained the Respondent in April 1996 to oppose the claim of Jeanette Miller, the mother of his daughter, for an increase in child support payments. Mr. Williams also complained that he had been denied visitation with his daughter. In July 1996, a hearing was held before a Master of the Circuit Court for Allegany County. Mr. Williams' child support obligation was found to be $562.00 per month. On October 31, 1996, Williams' exceptions were

Consent with this Court. We denied the petition and the hearing proceeded.

overruled by the Honorable J. Frederick Sharer and no appeal was taken pursuant to Mr. Lane's advice.

"In February 1997, Mr. Williams again engaged the services of the Respondent. This time, he sought a reduction in child support and visitation. The Respondent agreed to file a Complaint to Establish Visitation and a Motion to Modify Child Support. The Respondent does not dispute that he was retained [to] handle these issues. From February 1997 through September 19[9]8, Mr. Lane took no substantive action on behalf of Mr. Williams. No pleadings or motions were filed with the court, and no contact was made with Ms. Miller or her attorney.

"During this time, however, the Respondent engaged in a course of conduct to conceal the fact that he had taken no action on behalf of Mr. Williams. Mr. Lane told numerous deliberate falsehoods to Mr. Williams: he stated that counsel for Ms. Miller agreed to a reduction in the child support payments; that he had attended a hearing with Ms. Miller's counsel and that Mr. Williams' attendance was not necessary; that Ms. Miller had filed pleadings to oppose Mr. Williams' claim for visitation; that court dates had been cancelled.

"Perhaps the most incredulous web of falsehoods was in regard to a hearing allegedly scheduled for February 28, 1998. Mr. Lane informed Mr. Williams that a hearing had been scheduled for that date and that he had issued a subpoena compelling Ms. Miller's attendance. There was no hearing and no subpoena. However, Mr. Williams and his wife met the Respondent at the courthouse where the Respondent informed them that Ms. Miller had failed to appear. While Mr. Williams and his wife waited, Mr. Lane pretended to have a meeting with the Judge. He then falsely informed Mr. Williams and his wife that the Judge would rule in Williams' favor, and further falsely advised them that he would forward papers to the Judge for the Judge's signature. He later told Mr. Williams that the 'papers' were on the Judge's desk and that Ms. Miller had filed for a stay with respect to the Judge's Order. As there

had been no hearing and no judicial determination, all of these representations were untrue.

"When Mr. Lane joined the Office of the State's Attorney for Allegany County in September 1998, he informed Mr. Williams that his case had been referred to George McKinley, Esquire. Mr. Lane falsely advised Williams that a hearing had been scheduled for October 13, 1998. In fact, no hearing had been scheduled for that or any other date. At this point, Mr. Williams had not established an attorney-client relationship with Mr. McKinley. On October 13, 1998, Mr. Williams went to the Allegany County Circuit Court and reviewed his case file. He discovered that no papers of any kind had been filed by the Respondent.

"Mr. Williams searched for and located the Respondent, who admitted that no Complaint for Visitation or Motion for Reduction of Child Support had been filed. Mr. Lane stated, however, that the matter could be 'taken care of' that very day. As of October 13, 1998, Mr. Williams had not seen his daughter for approximately two years.

### *Bair Case*

"Cheryl Lynn Bair retained Mr. Lane on or about July 19, 1997 to represent her in a claim against Lanaconing Water Company (LWC) for termination of water service to her home. The Respondent agreed to represent her on a contingency fee basis but the terms of the fee were not communicated to Ms. Bair in writing.

"Although Ms. Bair's water service had been terminated in July 1997, the Respondent did not file a Complaint seeking an emergency *ex parte* injunction until February 26, 1998. Mr. Lane filed a Complaint for money damages against LWC contemporaneously with the filing of the Complaint for Injunction. As an explanation for his dilatory behavior, Mr. Lane explained to this Court that he had never filed for an injunction and, thus, he did not know the steps to take in doing so.

"At the time Mr. Lane filed for an injunction, Ms. Bair owed the water company approximately $772.00. The Respondent paid $550.00 from his own funds to LWC and LWC restored water service to Ms. Bair. The Respondent did not inform Ms. Bair that he had paid LWC, but rather gave her the impression that the injunction had been granted. Within approximately one month, Ms. Bair's water service was again terminated. Mr. Lane falsely advised Ms. Bair that he had filed a Motion for Sanctions against LWC for terminating her water service again. Subsequently, he told Ms. Bair that LWC had been sanctioned by the Court. From his own funds, he paid Ms. Bair $1,700.00 and indicated to her that said sum had come from LWC as a result of the sanctions.

"Perhaps the most incredulous web of falsehoods in regard to Ms. Bair's case centered around Mr. Lane's statement to her on or about June 30, 1998 that he had filed a Motion for Summary Judgment and that a judgment was granted in her favor in the amount of eleven[-]and-a-half million dollars. He further indicated that LWC had filed an appeal, [or] that LWC would immediately file same.

"In January 1999, Mr. Lane false[ly] advised Ms. Bair that he was involved in settlement discussions with LWC. In January or early February 1999, he told Ms. Bair that her case had settled for over eleven million dollars. He also misrepresented the nature of the settlement; that the Court had ordered payment to be made and that the Internal Revenue Service had charged Ms. Bair taxes on the settlement. Mr. Lane told his client to come to the Circuit Court for the purpose of receiving the Court ordered award. He told her to bring a suitcase for the purpose of carrying the substantial amount of cash which comprised part of the settlement. She was also told to have someone accompany her for the purpose of security. On February 10, 1999, at the Circuit Court for Allegany County, the Respondent disclosed to Ms. Bair for the first time that he had misled her concerning her lawsuit and he also disclosed that no money would be forthcoming from LWC."

The Circuit Court concluded that respondent, in his representation of Mr. Williams, had violated MRPC 1.1, 1.2, 1.3, 1.4(a) and (b), and 8.4(a), (c), and (d). The court found that respondent had violated the MRPC through the following actions: his failure to take substantive action on behalf of Mr. Williams, respondent's representation was not characterized by diligence and promptness, his deception deprived Mr. Williams of being able to make informed decisions about his case, he did not abide by his client's decision concerning the objectives of the case, he did not keep Mr. Williams reasonably informed about the case, and his misrepresentations about the status of Mr. Williams' case prevented Mr. Williams from obtaining the legal relief he had sought.

In Ms. Bair's case, the Circuit Court concluded that respondent had violated MRPC 1.1, 1.2, 1.3, 1.4(a) and (b), 1.5(c), and 8.4(a), (c), and (d). The court found that respondent had violated the MRPC through the following actions: his failure to provide Ms. Bair with the terms of the contingency fee in writing, respondent failed to understand how to file for an injunction and failed to take action on Ms. Bair's case, he did not abide by Ms. Bair's decisions concerning the objectives of the case, he did not act in a diligent and prompt manner, respondent knowingly misled and made misrepresentations to Ms. Bair, respondent's misrepresentations prevented his client from making informed decisions about her case and kept her from being reasonably informed about the status of her case, and respondent's deceit kept Ms. Bair from pursuing her interests in court.

█ Respondent has not filed any exceptions to the Circuit Court for Washington County's findings of fact or conclusions of law. The "hearing court's findings of fact are *prima facia* correct and will not be disturbed unless they are shown to be clearly erroneous." *Attorney Grievance Comm'n v. Garland,* 345 Md. 383, 392, 692 A.2d 465, 469 (1997) (citing *Attorney Grievance Comm'n v. Goldsborough,* 330 Md. 342, 347, 624 A.2d 503, 505 (1993)). After a review of the record, we hold that the findings of fact of the Circuit Court are not clearly

erroneous. We hold that the Circuit Court's conclusions of law are supported by the facts. The only issue being disputed by respondent is the appropriate sanction for his violations of the MRPC.

## II. Sanction

 We examined the purpose behind the attorney grievance procedure and the appropriate sanction for an attorney in *Attorney Grievance Commission v. Franz,* 355 Md. 752, 760–61, 736 A.2d 339, 343–44 (1999), when we stated:

"It is well-settled that the purpose of disciplinary proceedings is to protect the public rather than to punish the erring attorney. *Attorney Grievance Comm'n of Maryland v. Myers,* 333 Md. 440, 446–47, 635 A.2d 1315, 1318 (1994); *Attorney Griev. Comm'n v. Goldsborough,* 330 Md. 342, 364, 624 A.2d 503, 513 [(1993)]; *Attorney Griev. Comm'n v. Protokowicz,* 329 Md. 252, 262–63, 619 A.2d 100, 105 (1993); *Attorney Griev. Comm'n v. Myers,* 302 Md. 571, 580, 490 A.2d 231, 236 (1985); *Attorney Griev. Comm'n v. Velasquez,* 301 Md. 450, 459, 483 A.2d 354, 359 (1984); *Attorney Griev. Comm'n v. Montgomery,* 296 Md. 113, 119, 460 A.2d 597, 600 (1983). The public interest is served when this Court imposes a sanction which demonstrates to members of the legal profession the type of conduct that will not be tolerated. *Attorney Griev. Comm'n v. Kerpelman,* 288 Md. 341, 382, 420 A.2d 940, 959 (1980), *cert. denied,* 450 U.S. 970, 101 S.Ct. 1492, 67 L.Ed.2d 621 (1981). By imposing such a sanction, this Court fulfills its responsibility 'to insist upon the maintenance of the integrity of the Bar and to prevent the transgression of an individual lawyer from bringing its image into disrepute.' *Maryland St. Bar Ass'n v. Agnew,* 271 Md. 543, 549, 318 A.2d 811, 814 (1974). Therefore, the public interest is served when sanctions designed to effect general and specific deterrence are imposed on an attorney who violates the disciplinary rules. *See Protokowicz,* 329 Md. at 262–63, 619 A.2d at 105; *Attorney Griev. Comm'n v. Owrutsky,* 322 Md. 334, 355, 587 A.2d 511, 521 (1991); *Attorney Griev. Comm'n v. Alison,* 317 Md. 523, 540–41, 565

A.2d 660, 668 (1989). Of course, what the appropriate sanction for the particular misconduct is, in the public interest, generally depends upon the facts and circumstances of the case. *Attorney Griev. Comm'n v. Babbitt,* 300 Md. 637, 642, 479 A.2d 1372, 1375 (1984) (the facts and circumstances of a case will determine how severe the sanction should be); *Montgomery,* 296 Md. at 120, 460 A.2d at 600; *Attorney Griev. Comm'n v. Pollack,* 289 Md. 603, 609, 425 A.2d 1352, 1355 (1981). The attorney's prior grievance history, as well as facts in mitigation, constitutes part of those facts and circumstances. *Maryland State Bar Ass'n v. Phoebus,* 276 Md. 353, 362, 347 A.2d 556, 561 (1975)."

Petitioner recommends to this Court that the appropriate sanction is for respondent to be disbarred. Petitioner, relying on our recent case of *Attorney Grievance Commission v. Vanderlinde,* 364 Md. 376, 773 A.2d 463 (2001), states that disbarment should be the sanction for intentional dishonest conduct. Petitioner also contends that respondent has not presented any mitigation with regards to his conduct at the time of the misrepresentations. Petitioner states that respondent has only presented testimonials about his job performance with the Public Defender's Officer and the State's Attorney's Office, neither job being where the misrepresentations occurred.

Respondent recommends to this Court that the appropriate sanction for his misrepresentations is either (1) a suspension period of ninety days, (2) a suspension period of eighteen months, with all but the first sixty days of the suspension held in abeyance, subject to such monitoring conditions as this Court finds necessary and appropriate or (3) an indefinite suspension of eighteen months, with the respondent being suspended indefinitely from the civil practice of law, but being allowed to continue the criminal practice of law as an Assistant State's Attorney, again with such monitoring as this Court deems appropriate.

In mitigation of his misrepresentations, respondent states that at the time of the misconduct he had been practicing law for less than three years and had no previous legal experience outside of a law school clinic and an internship with the Office of the State's Attorney for Montgomery County. Respondent also states that since closing his civil practice he has received a positive evaluation from the Office of the Public Defender and an excellent evaluation from the Office of the State's Attorney for Allegany County. Respondent is also involved in the community as an assistant football coach at Bishop Walsh High School and as a coach for the Allegany High School mock trial team.

In mitigation, respondent also states that he is extremely remorseful and has no prior disciplinary record. Furthermore, the Circuit Court found that respondent's actions were not caused by a selfish motive, and respondent has been cooperative and forthcoming throughout the entire grievance process. Respondent also states that he was inexperienced at the time of the misconduct in the law and in client relations, and that he is a well-respected prosecutor and person, as shown by his letters of support.[3] Respondent contends that the delay from the time of the misconduct to the current proceedings works against his being severely sanctioned as he has proven to be a good lawyer with the Office of the State's Attorney and his being severely sanctioned would not satisfy the purpose of the disciplinary proceedings of protecting the public because he has proven in the delay that he is no longer a threat to the public.

Furthermore, respondent contends that *Vanderlinde* did not establish a bright-line rule that "this Court will impose disbarment for misrepresentations, regardless of circumstances or mitigation." Respondent further posits that the facts of *Vanderlinde* are distinguishable from the facts of the case at bar

---

3. The State's Attorney for Allegany County, Lawrence V. Kelly testified on behalf of respondent before the Circuit Court, and Deputy State's Attorney Barry R. Levine and Robert A. Alderson, Esq., wrote letters of recommendation for respondent.

and that the sanction in any disciplinary case results from the facts and circumstances of that particular case. Respondent contends that this Court's holding in *Vanderlinde* occurred after respondent's conduct, so even if *Vanderlinde* did establish a new bright-line rule for intentional dishonesty cases, that rule should not be applied to this case.

In *Vanderlinde*, Susan Vanderlinde admitted to stealing $3,880.67 from her employer, King's Contrivance Community Association (KCCA). Ms. Vanderlinde had returned the money before her employment with KCCA ended and her thefts had remained undetected until after she left KCCA. Ms. Vanderlinde admitted that she had violated MRPC 8.4(a), 8.4(b), and 8.4(c). Ms. Vanderlinde claimed that "the pressures of her life and the impairment of her mental faculties, including her periods of depression, mitigate against severe sanctions for the offenses she admits committing." *Attorney Grievance Comm'n v. Vanderlinde*, 364 Md. 376, 381, 773 A.2d 463, 466 (2001). Specifically, she contended that her depression and mental impairment should mitigate her punishment to a sanction less than disbarment. Similar to attorney disciplinary proceedings where this Court has considered alcohol and drug problems in respect to mitigation of sanctions, Ms. Vanderlinde likened her mental condition to an attorney with a drug or alcohol problem. She was, therefore, arguing "that where there is a finding that an attorney's conduct is, in whole or in part, a result of a mental condition that affects her or his actions, the Court should recognize a new mitigation circumstance that warrants less than a serious sanction." *Id.* at 387, 773 A.2d at 469.

After examining the history of the cases involving attorneys who were attempting to use drug or alcohol abuse to mitigate their sanction in a disciplinary proceeding, we held:

"Accordingly, we reiterate once again the position we announced in *Kenney*.[4] Moreover, we expound upon it by holding that, in cases of *intentional dishonesty*, misappro-

4. *Attorney Grievance Comm'n v. Kenney*, 339 Md. 578, 664 A.2d 854 (1995).

priation cases, fraud, stealing, serious criminal conduct and the like, we will not accept, as 'compelling extenuating circumstances,' anything less than the most serious and utterly debilitating mental or physical health conditions, arising from any source that is the 'root cause' of the misconduct *and* that also result in an attorney's utter inability to conform his or her conduct in accordance with the law and with the MRPC. Only if the circumstances are that compelling, will we even consider imposing less than the most severe sanction of·disbarment in cases of stealing, *dishonesty*, fraudulent conduct, the intentional misappropriation of funds or other serious criminal conduct, whether occurring in the practice of law, or otherwise."

*Id.* at 413–14, 773 A.2d at 485 (some emphasis added). We then stated, in looking to future cases involving intentional dishonesty, that:

"Upon reflection as a Court, in disciplinary matters, we will not in the future attempt to distinguish between degrees of intentional dishonesty based upon convictions, testimonials or other factors. Unlike matters relating to competency, diligence and the like, intentional dishonest conduct is closely entwined with the most important matters of basic character to such a degree as to make intentional dishonest conduct by a lawyer almost beyond excuse. Honesty and dishonesty are, or are not, present in an attorney's character."

*Id.* at 418, 773 A.2d at 488. We held that disbarment was the appropriate sanction for Ms. Vanderlinde.

We agree with respondent that in attorney grievance proceedings we must examine the facts, circumstances, and mitigation involved in each case and not take a procrustean approach. Nevertheless, as we stated in *Vanderlinde,* where money was misappropriated from an employer, "Disbarment ordinarily should be the sanction for intentional dishonest conduct." *Id.* at 418, 773 A.2d at 488. We have not, however, always found disbarment to be the appropriate sanction when there is misrepresentation involved, especially where misap-

propriation of money was not involved. In *Attorney Grievance Commission v. Harrington,* 367 Md. 36, 785 A.2d 1260 (2001), we found an indefinite suspension to be the appropriate penalty for an attorney who had made one misrepresentation to one client but whose major transgression was his lack of cooperation with the Attorney Grievance Commission. We did not apply *Vanderlinde* as a bright-line rule, but applied the facts and circumstances of that case to determine the appropriate sanction. What *Vanderlinde* holds is that "ordinarily" disbarment will be the appropriate sanction when dishonesty is involved, however, we must still examine the facts, circumstances, and mitigation in each case. In *Harrington,* there was one instance of a degree of misrepresentation. There was, however, no pattern of a course of deceitful conduct over an extensive period of time sufficient, in our view, to support a disbarment. The gravamen of the disciplinary proceeding was the attorney's lack of diligence and his lack of cooperation with bar counsel. There, we determined that the appropriate sanction was an indefinite suspension.

█ In the case *sub judice,* the appropriate sanction for respondent's repeated material misrepresentations that constitute a pattern of deceitful conduct, as opposed to an isolated instance, is disbarment. Respondent engaged in a pattern of continued deceitful misrepresentations of the most egregious nature, to the extent that his conduct amounted to intentional dishonesty. He has not provided any mitigation for his pattern of misrepresentations. Respondent failed to diligently act on his clients' behalf and he then compounded this failure by engaging in a pattern of deceitful and lying conduct designed to conceal his lack of diligence.

He has provided evidence about his professional career after the dishonest conduct, but no evidence in mitigation of the dishonest conduct. Respondent's continual deceit and sometimes outlandish conduct, along with his lack of mitigation for the dishonesty, could herald problems for his future clients. As stated, *supra,* the purpose of this proceeding is to protect the public. In cases like this, where the attorney's primary

misconduct is a pattern of serious deceitful conduct, ordinarily, the appropriate sanction, as it is in the case at bar, should be disbarment.

IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING THE COSTS OF ALL TRAN-SCRIPTS, PURSUANT TO MARYLAND RULE 16–761(b), FOR WHICH SUM JUDGMENT IS ENTERED IN FA-VOR OF THE ATTORNEY GRIEVANCE COMMISSION OF MARYLAND AGAINST SAMUEL JOSEPH LANE.

Chief Judge BELL joins in the result only.