47 A.3d 986

**ATTORNEY GRIEVANCE COMMISSION OF MARYLAND**

v.

**Perry Allen LONDON.**

**Misc. Docket AG No. 12, Sept. Term, 2011.**

Court of Appeals of Maryland.

July 10, 2012.

330

**332**

James P. Botluk, Asst. Bar Counsel (Glenn M. Grossman, Bar Counsel Attorney Grievance Commission of Maryland), for petitioner.

Howard Cardin, Esq., Cardin & Gitomer, P.A., Baltimore, MD, for respondent.

Argued before BELL, C.J., HARRELL, BATTAGLIA, GREENE, ADKINS, BARBERA, and McDONALD, JJ.

ADKINS, J.

Petitioner Attorney Grievance Commission of Maryland ("AGC"), acting through Bar Counsel, filed a Petition for Disciplinary or Remedial Action ("Petition") against Respondent Perry Allen London. Bar Counsel charged London with violating several Maryland rules and statutes in his capacity as representative of Gregory Kane. Specifically, Bar Counsel alleged that London violated Maryland Rule 16–609(a) (Trust Account); [1] Maryland Code (1989, 2010 Repl. Vol.), Section 10–306 of the Business Occupations and Professions Article (Misuse of Trust Money); [2] and the following Maryland Lawyers' Rules of Professional Conduct ("MLRPC"): [3] (1) Rule 1.1 (Competence); [4] (2) Rule 1.3 (Diligence); [5] (3) Rule 1.4 (Communication); [6] (4) Rule 1.15(a) and (c) (Safekeeping Proper-

---

**1.** Maryland Rule 16–609(a) provides:

An attorney or law firm may not borrow or pledge any funds required by the Rules in this Chapter to be deposited in an attorney trust account, obtain any remuneration from the financial institution for depositing any funds in the account, or use any funds for any unauthorized purpose.

**2.** Section 10–306 provides: "A lawyer may not use trust money for any purpose other than the purpose for which the trust money is entrusted to the lawyer."

**3.** Unless otherwise provided, all citations below to the rules are to the Maryland Lawyers' Rules of Professional Conduct ("MLRPC").

**4.** Rule 1.1 provides:

A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation.

**5.** Rule 1.3 provides: "A lawyer shall act with reasonable diligence and promptness in representing a client."

**6.** Rule 1.4 provides:

(a) A lawyer shall:
(1) promptly inform the client of any decision or circumstance with respect to which the client's informed consent, as defined in Rule 1.0(f), is required by these Rules;
(2) keep the client reasonably informed about the status of the matter;
(3) promptly comply with reasonable requests for information; and

ty);[7] (5) Rule 1.16(d) (Declining or Terminating Representation);[8] and (6) Rule 8.4(c) (Misconduct).[9]

Following a hearing before a judge of the Circuit Court for Baltimore City, the hearing judge issued Findings of Fact and Conclusions of Law in which she concluded, by clear and convincing evidence, that London violated MLRPC Rules 1.1, 1.3, 1.4, and 8.4.

---

(4) consult with the client about any relevant limitation on the lawyer's conduct when the lawyer knows that the client expects assistance not permitted by the Maryland Lawyers' Rules of Professional Conduct or other law.

(b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

7. Rule 1.15(a) and (c) provide:

(a) A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account maintained pursuant to Title 16, Chapter 600 of the Maryland Rules, and records shall be created and maintained in accordance with the Rules in that Chapter. Other property shall be identified specifically as such and appropriately safeguarded, and records of its receipt and distribution shall be created and maintained. Complete records of the account funds and of other property shall be kept by the lawyer and shall be preserved for a period of at least five years after the date the record was created.

\* \* \*

(c) Unless the client gives informed consent, confirmed in writing, to a different arrangement, a lawyer shall deposit legal fees and expenses that have been paid in advance into a client trust account and may withdraw those funds for the lawyer's own benefit only as fees are earned or expenses incurred.

8. Rule 1.16(d) provides:

(d) Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee or expense that has not been earned or incurred. The lawyer may retain papers relating to the client to the extent permitted by other law.

9. Rule 8.4(c) provides:

"It is professional misconduct for a lawyer to ... (c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation[.]"

The AGC's investigation of London was triggered by the complaint of Gregory Kane. The hearing judge found Kane to be a credible witness, but said that "London was not as credible in his testimony, with poor and incomplete records, and suggesting that much of the work he performed for Mr. Kane from 2006 until 2009 was without compensation." The hearing judge made the following findings of fact by clear and convincing evidence:

1. Gregory Kane was introduced to Perry London in April, 2006 by Gladys Basilio in connection with the transfer of the real property located at 813 N. Carey Street from Ms. Basilio to Mr. Kane. Mr. Kane paid Mr. London $450 in cash on April 27, 2006 which represented the pre-payment of attorney fees at a rate of $150.00 per hour. Mr. London is not certain if those funds were deposited in his escrow account or in his regular account. Representing Ms. Basilio, Mr. London wrote to [Joseph] Kershner, Esquire of the Baltimore Housing Authority on April 27, 2006 and to Kyriakos [Marudas], Esquire, Assistant City Solicitor on May 11, 2006. Mr. London also had telephone contact with Mr. Marudas on July 28, 2006 and with Jennifer Lloyd, Esquire, Assistant City Solicitor. On July 31, 2006 Ms. Lloyd filed a Motion to Vacate [Judgment] and Dismiss as to 813 N. Carey Street. A handwritten note contained in [London's] file, dated April 27, 2006, indicated that once the title to the property was cleared, a recorded deed was to be forwarded to Friendly Outreach Services, Inc. The next activity in the file shows that the docket entries for the tax redemption case 24–C–99–005261 were printed on September 28, 2006, that a search of the State's Department of Assessments and Taxation Real Property Database was completed on April 3, 2007, and that a search of the City of Baltimore Tax Certificate Auction website was completed on May 15, 2007. Mr. Kane was copied on the April 27, 2006 correspondence to Mr. Kershner. There is no evidence that Mr. London ever prepared a deed for this property as he testified. There is no evidence documenting any other communication with Mr. Kane regarding this property.

2. A second file for the property located at 813 N. Carey Street was created sometime in 2007. As of December 24, 2007 Mr. London was on notice that title to the property had not been transferred to Mr. Kane or to Friendly, his company. Lien Certificate Number 0570326, issued on December 28, 2007 at the request of Mr. London, indicated that a deed could not be recorded until clearance was obtained from the Tax Sale Section. On both December 28, 2007 and January 8, 2008 an inquiry was made to the City of Baltimore Tax Sale Work Records which indicated that the issues under case number 24–C–99–005261 regarding title to the property had not been resolved. On June 26, 2008 Mr. London wrote to the tenant at 813 N. Carey Street on behalf of Friendly, providing formal notice to [the] tenant to vacate the premises. A copy of the notice was sent to Friendly. By November 2008 the metered water bill for the premises was addressed to Gladys Basilio c/o Friendly Outreach Services. On December 11, 2008 Mr. London applied again for a Lien Certificate, which was issued on December 15, 2008. There is no other activity recorded in this file until April 1, 2010 when an inquiry was made to the Maryland Department of Assessments and Taxation Real Property [Database] which indicated that the property located at 813 N. Carey Street was still titled to Gladys Basilio. There is no evidence documenting any other communication with Mr. Kane regarding this property. There is no evidence that Mr. London ever prepared a deed for this property.

3. Sometime after July 3, 2006 Mr. Kane and Marriam Robinson agreed on the sale of property located at 2701 Classen Avenue in Baltimore City for a price of $11,000. Mr. Kane and Ms. Robinson came to Mr. London with a signed option agreement for the sale and an anticipated settlement date of August 20, 2006. By September 27, 2006 Mr. London knew or should have known that there were a number of outstanding liens on the property, that real property taxes had not been paid since 2003, that there may have been additional delinquent taxes for years prior to

2003, and that Marriam Robinson was the personal representative of the Estate of Clifford Robinson, Jr., the recorded owner of the property. On October 13, 2006 Mr. London wrote to Ms. Robinson to discuss the liens, property taxes and water bills. There is no evidence that there was any communication with Mr. Kane regarding this development. Although Mr. London testified that nothing else happened, a draft of a deed of assignment from Marriam Robinson to Monique Donigan, Mr. Kane's new wife and business partner, reflects a date of February 8, 2007. As of March 30, 2007 $6,025.18 was required for Mr. Robinson's estate to redeem the property for unpaid taxes. On December 11, 2008 Mr. London completed an application for [a] lien certificate for the Classen Avenue property, listing Clifford Robinson as the owner. There was no evidence of any action on the case after this date, nor any communication with [Mr.] Kane, Ms. Donigan, or any of their agents. Mr. London belatedly recalled that he was paid $500 in cash in 2006 as a flat fee for his work.

4. A file was opened for 428 Mosher Street on or about April 3, 2007, when a search of the State of Maryland Department of Assessments and Taxation Real Property [D]atabase was conducted. A second search was conducted on June 8, 2007. On June 18, 2007 Shameka L. Littles transferred title to the property located at 428 Mosher Street to Friendly in a deed prepared by Perry A. London and notarized by Arthur London. There is no evidence that this deed was ever recorded. On May 13, 2008 the City of Baltimore Department of Public Works sent a letter to Ms. Littles at the Friendly business address regarding a request for a hearing for the metered water bill for the property. The hearing was scheduled for June 3, 2008 and Mr. London acknowledges the receipt of $500 in cash from Mr. Kane to attend this hearing, accompanied by James Cook, a Friendly employee. A handwritten note "email by 7/1 any documentation re: fire and ownership and letter of authorization from Littles" is contained in the file. There is, however, no indication of when or how this request was transmitted to

Mr. Kane. On August 6, 2008 Ms. Littles signed a hand-written authorization for Mr. London to represent her at a hearing regarding the water bill. There is no evidence of any further communication between Mr. Kane and Mr. London about the outstanding water bill. Mr. London testified that he did not appear at any subsequent hearings. 5. On September 9, 2009 Mr. Kane faxed to Mr. London nine pages related to a Petition to Foreclose Right of Redemption filed by Harbor Pier Homes, LLC under case number 24–C–09–004563 for the property located at 428 Mosher Street. On September 30, 2009 Mr. London filed an Answer on behalf of Shameka Littles, representing that she was the title holder and owner of the property and intended to redeem the property. The file contains a copy of the Response from the Petitioner, indicating that $11,533.36 was due as of November 3, 2009 to redeem the property. There are no other documents in the file other than the Court's Order dated March 23, 2010 denying the petition to redeem and indicating that "James Cook is not a Defendant in [this] case["] and that it was unclear to the court what interest he had in the property.[ ] It is undisputed that Mr. Cook was an employee of Friendly. There is, however, no copy of anything filed with the Court by Mr. London other than the September 30, 2009 Answer. There is no documentation of any communication between Mr. London and Mr. Kane or his agents regarding this property. 6. There is a file regarding 809 N. Carey Street which indicates that Mr. London received a fax from the City of Baltimore Department of Finance, Collection Division regarding this property on September 19, 2007. There is no evidence of any other activity until April 1, 2009 when a search was run on the Maryland Department of Assessments and Taxation Real Property Database. There is no documentation of any communication between Mr. London and Mr. Kane or any of his agents regarding this property. 7. There is a file regarding 2123 Division Street, a distressed property which may have been purchased by Friendly Outreach Services through a tax sale. Respon-

dent's Exhibit # 6 indicates that a Petition to Foreclose Rights of Redemption, filed by someone other than Mr. London in May 2005, was dismissed in March 2008 for lack of prosecution. On December 15, 2008 Mr. London obtained the tax lien record for the property. There is no documentation of any communication between Mr. London and Mr. Kane or any of his agents regarding this property.

8. There are no files to reflect the corporate work which Mr. London says he completed nor are there any files that correspond with the $2,300 payment made by check on June 8, 2007 and [the] $1,500 payment made by check on November 29, 2007.

9. The adding machine tape prepared by Mr. London reflects, in part, outstanding liens and taxes for 813 N. Carey Street, 2701 Classen Avenue and 2123 Division Street. At the bottom Mr. London made a hand written annotation "plus $100 filing fee, plus 2 hearings and bail arrangements."

10. None of the records contain a clear description of the nature and scope of the work to be performed by Mr. London or a record of the compensation to be paid to Mr. London.

From these facts, the hearing judge concluded that London violated MLRPC Rules 1.1, 1.3, 1.4, and 8.4, but she could not conclude that any of the other alleged violations had taken place. Specifically, the hearing judge opined:

1. Petitioner alleges that the Respondent violated Rule 1.1, Competence. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation. No particular level of prior experience in real estate matters is required and it appears as if the Respondent knew which government agencies and personnel to interact with in an attempt to pursue his client's objectives. However, there is clear and convincing evidence that the Respondent failed to maintain complete and well documented client files, failed to keep the client informed of developments, failed to act diligently in

pursuing the client's objectives, and failed to maintain reliable records with regard to client funds. Therefore, the court concludes that the Respondent failed to provide competent representation to Gregory Kane.

2. Petitioner also alleges that the Respondent violated Rule 1.3, Diligence. A lawyer is required to act with reasonable diligence and promptness in representing a client. The Respondent was retained in connection with the 813 N. Carey Street property in April 2006 and by March 2010 the transfer of the title remained unresolved. There is no record of any [legal] services performed in relation to this property from September 2006 until April 2007, from January 2008 until June 2008, and then again from December 2008 until April 2010. The Respondent was retained in connection with the 2701 Classen Avenue property in July 2006. There is [no] evidence of any activity from March 2007 until December 2008. The passage of time adversely affected Mr. Kane's position with respect to each of these properties, as interest continued to accrue with respect to the outstanding bills and liens. For the 428 Mosher Street property the Respondent drafted a deed to transfer the title from Sham[e]ka Littles to Friendly Outreach Services, Inc. in June 2007[, and] in June 2008 the Respondent requested documentation of ownership from the client. While he requested an authorization from Ms. Littles, there is no evidence that he drafted one for her signature. Based upon the Respondent's repeated failure to monitor the work that had been undertaken, the court concludes that the Respondent's representation displayed neglect and a lack of diligence in dealing with Mr. Kane's business interests.

3. Petitioner next alleges that the Respondent violated Rule 1.4, Communication. A lawyer is required to keep the client reasonably informed about the status of the matter undertaken and to promptly comply with reasonable requests for information. There is clear and convincing evidence that the Respondent failed to maintain regular written or oral communication with Mr. Kane regarding the representations that had been undertaken and failed to keep

Mr. Kane apprised of [and] explain the status of the cases. Moreover, correspondence to the tenant on behalf of Friendly at a time when the Respondent knew that the title had not been transferred forms the basis for the court's conclusion that the Respondent misrepresented to the client the actual status [of the] work undertaken for 813 N. Carey Street.

4. Petitioner also alleges that the Respondent violated Rule 1.15, Safekeeping Property. It is impossible to determine how much money was paid to the Respondent, when it was paid, and where it was deposited, due to the utter lack of record keeping of both the Respondent and Mr. Kane. While [the] lack of record keeping by the Respondent is extremely troubling, the court is unable to conclude that the Respondent violated Rule 1.15.

5. Petitioner alleges that the Respondent violated Rule 1.16, Declining or Terminating Representation. This court is unable to find a record of legal work completed by the Respondent or a record of time spent on Mr. Kane's matters. In this case the Commission is unable to show clearly the amounts of money paid to the Respondent and the dates when he was paid. There is also no record to support that the Respondent's assertion that he advanced money on behalf of Mr. Kane, incurred costs, or paid any fees [is untrue]. The court is unable to conclude that the Respondent violated Rule 1.16.

6. Petitioner also alleges that the Respondent violated Rule 8.4, Misconduct. The Respondent's business practices are careless and negligent, with no clear log of activity performed on behalf of the client and no clear record of payments received. The court is convinced that the Respondent [misled] the client into believing that substantive work was being performed on the various cases. Specifically with respect to the property located at 813 N. Carey Street, the Respondent indicates in his answers to interrogatories that he prepared a deed to transfer 813 N. Carey Street and gave it to Mr. Kane to record. There is, however, no copy of any deed in the files. Instead there are

inquiries in 2006, 2008, and 2010, all of which indicate that title to the property had not been transferred. The court concludes that the Respondents' conduct involved the misrepresentation of work he had performed for Mr. Kane and that the misrepresentation was willful.

7. Petitioner next alleges that the Respondent violated Maryland Rule 16–609, Trust Account–Prohibited Transactions. This court believes that the Respondent has improperly handled unearned fees, depositing them in his operating account rather than in his trust account. However, the Commission has been unable to prove this by clear and convincing evidence and the court is unable to conclude that the Respondent violated Maryland Rule 16–609.

8. Petitioner also alleges that the Respondent violated the Maryland Annotated Code Business Occupations and Professions Article § 10–306, Misuse of Trust Money. This court believes that the Respondent has improperly handled cash received from Mr. Kane. The court also believes that the missing financial records indicate that the Respondent has been less than candid with the Commission and the court. The fact that there were no notations of any of the files surrendered to the Commission suggests that the file folders may have been substituted. However, since there is no clear evidence that Mr. Kane provided the Respondent with the $3,000 in cash from the purchase price for the Classen property to pay off the liens, the court is unable to conclude that the Respondent has misused trust money.

### Summary

Based upon the record available, this court concludes that the Respondent has violated Rule[s] 1.1, 1.3, 1.4, and 8.4 and that the violations were caused by the Respondent's careless and negligent business practices. The record shows the aggravating factor of the prior disciplinary action against the Respondent in 1977. No mitigating factors were offered by the Respondent.

## DISCUSSION

### Standard of Review

■■■■ As we recently explained in *Att'y Grievance Comm'n v. Tanko:*

> In attorney discipline proceedings, this Court has original and complete jurisdiction and conducts an independent review of the record. We accept a hearing judge's findings of fact unless we determine that they are clearly erroneous. That deference is appropriate because the hearing judge is in a position to assess the demeanor-based credibility of the witnesses. In that regard, the hearing judge is permitted to pick and choose which evidence to rely upon from a conflicting array when determining findings of fact.
>
> We review de novo the hearing judge's proposed conclusions of law. In other words, the ultimate determination . . . as to an attorney's alleged misconduct is reserved for this Court. In that regard, we examine the record to ascertain whether there was sufficient evidence to support the hearing judge's legal conclusions, by a clear and convincing standard of proof. (Citations and quotation marks omitted.)

*Att'y Grievance Comm'n v. Tanko,* 427 Md. 15, 45 A.3d 281 (2012).

### Exceptions

■■■■ Neither London nor Bar Counsel note any exceptions to the hearing judge's findings of fact, and we shall therefore accept them as established.[10] *See* Md. Rule 16–759(b)(2)(A)

---

10. At oral argument, the parties referred to the hearing judge's "finding" that London had committed willful misrepresentation. London also states in his exceptions that he "takes exception to a number of findings of fact and conclusions of law[.]" Yet neither party notes any exceptions to any part of the 10 factual findings listed by the hearing judge, and none of the parties' contentions are contrary to the hearing judge's findings of fact. Rather, the parties discuss the hearing judge's conclusions of law. Therefore, we do not believe that the parties intended to note any exceptions to the hearing judge's factual findings. The use of the word "findings" appears to have been inadvertent. Moreover, after reviewing the very limited record, and keeping in mind

("If no exceptions are filed, the Court may treat the findings of fact as established for the purpose of determining appropriate sanctions, if any."); *Att'y Grievance Comm'n v. Butler*, 426 Md. 522, 44 A.3d 1022 (2012) (same). London notes several exceptions to the hearing judge's legal conclusions, arguing that his conduct did not amount to a violation of MLRPC Rules 1.1, 1.3, 1.4, or 8.4. We shall address the hearing judge's conclusions individually.

Before discussing the individual conclusions, however, it is useful to address London's overarching objection to the hearing judge's memorandum opinion. London broadly asserts that the hearing judge "failed to take into consideration the fact that London had moved his offices and all records were in storage." Because of the move, he asserts, he "did not have accessibility to the stored records," which made it "difficult for [him] to specifically respond to the statements of . . . Kane." He points out that he "provided his files to the Commission immediately upon request" and further asserts:

> The files relevant to the Court's inquiry had been provided to Bar Counsel through Bar Counsel's investigator and were not therefore available to the Respondent. The [hearing judge's] reference to these files placed the Respondent and Counsel in a difficult position since the Respondent (and thus, Counsel) did not have the ability to review same.

Yet the hearing judge recognized and dealt with the lack of records in her memorandum opinion. The opinion begins by observing that the case is "somewhat challenging" because "neither party was able to offer clear documentation to support its version of the professional duties undertaken nor the responsibilities to be met by the Respondent." Ultimately, however, the hearing judge held the lack of records against

that the hearing judge's factual findings were based on her determination that Kane's testimony was credible, we would hold that her factual findings are supported by clear and convincing evidence, were we faced with exceptions to them.

London, finding that he was "not as credible in his testimony" in part because of his "poor and incomplete records[.]"

■ To be sure, London made his defense more difficult by not being able to produce many of his records and, presumably, not retaining copies of the records that he provided to Bar Counsel. But a lack of records cannot prevent the hearing judge from finding violations of the MLRPC. If we were to hold that a lawyer's inability to produce records could prevent findings and conclusions based on clear and convincing evidence, we would allow bad lawyers to insulate themselves from prosecution by hiding, destroying, or simply not keeping records. Such a result would be contrary to the purposes underlying the MLRPC. Kane's testimony provides a sufficient evidentiary basis for the hearing judge's conclusions, especially since he was found to be a "credible witness" while London was found to be "less credible." *See Att'y Grievance Comm'n v. McGlade*, 425 Md. 524, 540, 545, 42 A.3d 534, 543, 547 (2012) (ratifying the hearing judge's conclusion, based on the testimony of two credible witnesses, that the respondent had committed a violation of MLRPC Rule 8.4(c)); *Att'y Grievance Comm'n v. Byrd*, 408 Md. 449, 481, 970 A.2d 870, 888 (2009) ("Judge Rubin, as he was entitled to do, found Hoffman's testimony regarding the falsity of Byrd's reports to be highly credible, accurate, and reliable. Based on that testimony, there was sufficient evidence to support Judge Rubin's finding that Respondent's reports to the bankruptcy court were false, and that he knew they were false when he filed the reports." (quotation marks and punctuation omitted)).

■ Furthermore, as described in more detail below, sound record-keeping is an essential part of competent representation, and an attorney's failure to keep or produce records can itself lead to a violation of the MLRPC. *See, e.g., Att'y Grievance Comm'n v. Taylor*, 405 Md. 697, 718, 955 A.2d 755, 767 (2008) ("[A]n attorney violates Rule 8.1(b) when he fails to make a timely and orderly reply even though the failure was because of disorganization in his record keeping practices."

(citing *Att'y Grievance Comm'n v. Sapero,* 400 Md. 461, 486, 929 A.2d 483, 498 (2007) (lawyer violated the MLRPC when he "attempted to comply with the subpoena, but did not comply, in a timely manner, because of disorganization in his record keeping practices")))). In sum, London has no one to blame but himself for his inability to produce the records that he suggests would have supported his side of the story.[11] *Cf. In re Gabriel,* 110 N.M. 691, 799 P.2d 127, 128 (N.M.1990) ("While appropriate record keeping of necessity involves an investment of time, there is no reason to believe that one who has attained the level of education required of a licensed attorney cannot either manage to meet these requirements or hire and train an employee to do so and provide appropriate supervision to that person.").

---

**11.** London contends that his banking records "were not requested and were placed in storage along with the files, records, and other papers which were part of [his] practice." Thus, he says that he "disagrees with the Court that the inability to obtain these records constitutes careless and negligent business practices" and instead "submits that the inability to obtain these records does not constitute a violation of Rules 1.1, 1.3, 1.4, and 8.4." Yet the record indicates that these records were requested during discovery when Bar Counsel sought production of "all files maintained by you in connection with your representation of Gregory Kane[,]" "all records of funds received by you from Gregory Kane and your handling of those funds[,]" and "all records of funds pertaining to your attorney escrow account for the period of May 2006 until May 2009, including but not limited to checks, deposit slips, bank statements and client ledgers." London indicated in his response to Bar Counsel's request that the records relating to money were "in storage and arrangements have been made to remove them from storage at which time they will be provided." Even so, many records were not provided.

London also "believes further comment is required" regarding the hearing judge's conclusion that he did not violate Section 10–306 of the Business Occupations and Professions Article (Misuse of Trust Money). Although the hearing judge concluded that there was insufficient evidence to find a violation, it observed that the lack of notations on any of the files suggested that certain file folders may have been substituted. London disagrees with this interpretation, explaining that his counsel "insisted ... [on verifying] that there were no notations on the files ... to evidence the fact that the testimony of Mr. Kane that the amounts paid were noted on the file and signed by him (Kane) was a lie." Yet whether the lack of notation evidenced a possible substitution, a lack of payment, or both, is irrelevant, because none of the trial judge's conclusions were based on that interpretation.

## Exceptions to Conclusions of Law

### A. *Rule 1.3—Diligence*

London notes an exception to the hearing judge's conclusion that he violated Rule 1.3, which provides: "A lawyer shall act with reasonable diligence and promptness in representing a client."

In this case, the hearing judge concluded that London's "neglect," "repeated failure to monitor the work," and lack of "activity" on several client matters constituted a violation of Rule 1.3:

> The Respondent was retained in connection with the 813 N. Carey Street property in April 2006 and by March 2010 the transfer of the title remained unresolved. There is no record of any [legal] services performed in relation to this property from September 2006 until April 2007, from January 2008 until June 2008, and then again from December 2008 until April 2010. The Respondent was retained in connection with the 2701 Classen Avenue property in July 2006. There is [no] evidence of any activity from March 2007 until December 2008. The passage of time adversely affected Mr. Kane's position with respect to each of these properties, as interest continued to accrue with respect to the outstanding bills and liens. For the 428 Mosher Street property the Respondent drafted a deed to transfer the title from Sham[e]ka Littles to Friendly Outreach Services, Inc. in June 2007[, and] in June 2008 the Respondent requested documentation of ownership from the client. While he requested an authorization from Ms. Littles, there is no evidence that he drafted one for her signature. Based upon the Respondent's repeated failure to monitor the work that had been undertaken, the court concludes that Respondent's representation displayed neglect and a lack of diligence in dealing with Mr. Kane's business interests.

The failure to consistently monitor and manage a client's business is a classic example of a Rule 1.3 violation. *See, e.g., Att'y Grievance Comm'n v. Fox,* 417 Md. 504, 523, 11 A.3d 762, 773 (2010) ("Respondent maintained a system for

monitoring his active cases that was insufficient, causing Respondent to forget about [the client's] case. . . . It appears that at some point Respondent began ignoring [the client]. Therefore, this Court finds Respondent in violation of Rule 1.3."). As we said in *Att'y Grievance Comm'n v. Montgomery*, "this Court has consistently regarded neglect and inattentiveness to a client's interests to be a violation of the Canons of Ethics warranting the imposition of some disciplinary sanction." *Att'y Grievance Comm'n v. Montgomery*, 296 Md. 113, 120, 460 A.2d 597, 600 (1983).

London argues that his conduct did not display neglect or a lack of diligence because he "continued to monitor the various undertakings requested by the client." That may be so, but monitoring without diligent action is still a violation. For example, in *Att'y Grievance Comm'n v. Lee*, we found that an attorney who took no action in his client's matter "until almost one year after payment of the fee" had violated this rule. *See Att'y Grievance Comm'n v. Lee*, 390 Md. 517, 526, 890 A.2d 273, 278 (2005). Here, London's procrastination and neglect was even more egregious, as the hearing judge found, by clear and convincing evidence, that London had failed to take action in the 813 N. Carey Street matter for periods of 7 months (September 2006 to April 2007); 5 months (January 2008 to June 2008); and 16 months (December 2008 to April 2010); and in the 2701 Classen Avenue matter for a period of 21 months (March 2007 to December 2008). Such neglect is certainly a violation of the diligence norm. Moreover, by failing to prepare an authorization for Littles, London "neglected to perform" the necessary services for his client, which also constitutes a violation of Rule 1.3. *See Att'y Grievance Comm'n v. Patterson*, 421 Md. 708, 737, 28 A.3d 1196, 1213 (2011) (lawyer violated Rule 1.3 when he "neglected to perform any kind of services or undertake research, to collect documents to support the complaint").[12] This exception is overruled.

---

12. London additionally posits that "the client continued to come to him for additional representation which would rebut any allegation that the

### B. Rule 8.4—Misrepresentation

London notes an exception to the hearing judge's conclusion that he violated Rule 8.4, which lists misrepresentation among several examples of professional misconduct:

It is professional misconduct for a lawyer to . . . (c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation[.]

The hearing judge concluded that London's misrepresentations regarding the 813 N. Carey Street matter constituted misconduct under Rule 8.4:

The court is convinced that the Respondent [misled] the client into believing that substantive work was being performed on the various cases. Specifically with respect to the property located at 813 N. Carey Street, the Respondent indicates in his answers to interrogatories that he prepared a deed to transfer 813 N. Carey Street and gave it to Mr. Kane to record. There is, however, no copy of any deed in the files. Instead there are inquiries in 2006, 2008, and 2010, all of which indicate that title to the property had not been transferred. The court concludes that the Respondents' conduct involved the misrepresentation of work he had performed for Mr. Kane and that the misrepresentation was willful.

London contends that he did not willfully misrepresent to the client the status of work undertaken for 813 N. Carey Street. He first asserts that no misrepresentation occurred because he simply did what Kane requested, which was to "prepare a deed to transfer 813 Carey Street[.]" He did not take the extra step of recording the deed, he says, for two reasons: (1) "Mr. Kane is experienced in real estate and . . . was . . . able to undertake the recording of the deed," and (2) "Mr. Kane sought to minimize the costs of all legal representa-

---

client was dissatisfied with the information being provided to him and the services being rendered." Yet even if Kane were satisfied with the services being rendered (a claim which Kane's complaint and testimony belie), it would be no defense to an MLRPC violation, as client consent cannot excuse unethical practice.

tion and therefore, avoid or at least reduce costs by recording the deeds himself." He points out that Kane was able to record the deed himself, and that a deed need not be recorded to pass title.

Bar Counsel responded at oral argument that, although Kane may have been able to record the deed himself, Kane testified that London told him that he had "filed the deed" and that he "has the deed and it's taken care of." These statements are contrary to London's characterization of an agreement in which London would prepare a deed and Kane would file it. Moreover, Kane testified that he "never received any deeds" from London. Thus, regardless of whether London prepared a deed and didn't file it or never prepared it at all, his "misrepresentation of [the] work he had performed" clearly constituted a violation of Rule 8.4(c). We dealt with similar facts in *Att'y Grievance Comm'n v. Reinhardt*, in which we found a Rule 8.4(c) violation because the lawyer

> was dishonest and misrepresented the truth when he told his client that he was working on the case when, in fact, he had lost the file and was not working on the case at all. In dealing with his client, Respondent exhibited a lack of probity, integrity and straightforwardness, and, therefore, his actions were dishonest in that sense.

*Att'y Grievance Comm'n v. Reinhardt*, 391 Md. 209, 222, 892 A.2d 533, 540 (2006); *see also Att'y Grievance Comm'n v. Webster*, 402 Md. 448, 462–63, 937 A.2d 161, 169 (2007) ("Respondent acted dishonestly and deceitfully in violation of M[L]RPC 8.4(c) when he lied to his client about his failure to file the petition and did not promptly return her fee."); *Att'y Grievance Comm'n v. Harrington*, 367 Md. 36, 48, 785 A.2d 1260, 1267 (2001) (lawyer violated Rule 8.4(c) by leading his client to believe he had filed a legal malpractice lawsuit when actually he had not).

At the very least, London failed to communicate regarding a material fact of his representation concerning 813 N. Carey Street. The failure to communicate a material fact with a

client, when done in a misleading way, is a violation of Rule 8.4(c). *See Att'y Grievance Comm'n v. Brown*, 426 Md. 298, 44 A.3d 344 (2012) ("This Court will find a [Rule] 8.4(c) violation also when an attorney conceals material information from his or her client, despite not misrepresenting explicitly the information." (citing *Att'y Grievance Comm'n v. Bleecker*, 414 Md. 147, 168–69, 994 A.2d 928, 940–41 (holding that the lawyer's "concealment from his client of material information regarding the dismissal of her case represents a violation of Rule 8.4(c)")))); *Att'y Grievance Comm'n v. Calhoun*, 391 Md. 532, 548, 894 A.2d 518, 527 (2006) ("[O]ne can mislead by silence and lack of communication.").

Again, London's failure to keep adequate records clearly played a role in the hearing judge's conclusion, as she observed that there was no copy of the deed that London claims to have prepared. London is responsible for this evidentiary gap. With no reason to doubt the hearing judge's finding that Kane was a more credible witness than London, we conclude that the evidence is plainly sufficient to support a violation of Rule 8.4(c).[13]

## C. *Rule 1.4—Communication*

London notes an exception to the hearing judge's conclusion that he violated Rule 1.4, which provides, in pertinent part: "A lawyer shall ... keep the client reasonably informed about the status of the matter." Rule 1.4(a)(2).

---

**13.** London also objects to the juxtaposition of "willful misrepresentation" alongside "careless and neglectful business practices" in the hearing judge's memorandum opinion. He argues that these two conclusions are inconsistent: either there was willful misrepresentation or carelessness, but there cannot have been both. Yet simply reading the trial judge's opinion reveals that these two ideas are not inconsistent. The opinion mentions carelessness and negligence in connection with London's failure to keep a "clear log of activity performed on behalf of the client" or a "clear record of payments received." In contrast, the opinion mentions willful misrepresentation in connection with its conclusion that London "misled the client into believing that substantive work was being performed on the various cases." These conclusions are not inconsistent.

The hearing judge concluded that London's general lack of communication with Kane, combined with his misrepresentation regarding 813 N. Carey Street, constituted a violation of Rule 1.4:

> There is clear and convincing evidence that the Respondent failed to maintain regular written or oral communication with Mr. Kane regarding the representations that had been undertaken and failed to keep Mr. Kane apprised of [and] explain the status of the cases. Moreover, correspondence to the tenant on behalf of Friendly at a time when the Respondent knew that the title had not been transferred forms the basis for the court's conclusion that the Respondent misrepresented to the client the actual status [of the] work undertaken for 813 N. Carey Street.

London argues that he did not violate Rule 1.4. He points out that "Kane was unavailable on many occasions" and that he "expended a great deal of time and effort in order to communicate with him." He says that he "either directly or through the agents of Mr. Kane apprised him of the status of all matters."

 Yet London's misrepresentation alone constitutes a violation of Rule 1.4. *See Webster*, 402 Md. at 469, 937 A.2d at 173 (lawyer violated Rule 1.4 by lying to his client, saying that he had filed a petition when he had not); *Att'y Grievance Comm'n v. Steinberg*, 395 Md. 337, 369–70, 910 A.2d 429, 448 (2006) (lawyer violated Rule 1.4 by lying to his client about having filed a petition); *Att'y Grievance Comm'n v. Guida*, 391 Md. 33, 41, 43–44, 891 A.2d 1085, 1089, 1091 (2006) (lawyer violated Rule 1.4 by representing that he had filed and moved forward with an adoption proceeding "knowing full well that he had never filed the action with the court").

 Furthermore, London's difficulty in reaching his client cannot excuse his failure to keep the client reasonably informed. *See, e.g., Byrd*, 408 Md. at 457–59, 970 A.2d at 874–76 (lawyer violated Rule 1.4 by failing to notify his client of a trial date, despite his contention that he "had not been able to reach his client in a couple of weeks and the last time he had

spoken to his client, she told him that she was going out of town for the 4th" (quotation marks omitted)). For these reasons, this exception is overruled.

### D. *Rule 1.1—Competence*

As a sort of summary of London's violations of the MLRPC, the hearing judge concluded that London failed to provide competent representation under Rule 1.1:

> Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation. No particular level of prior experience in real estate matters is required and it appears as if the Respondent knew which government agencies and personnel to interact with in an attempt to pursue his client's objectives. However, there is clear and convincing evidence that the Respondent failed to maintain complete and well documented client files, failed to keep the client informed of developments, failed to act diligently in pursuing the client's objectives, and failed to maintain reliable records with regard to client funds. Therefore, the court concludes that the Respondent failed to provide competent representation to Gregory Kane.

London objects to this conclusion, arguing that he did not fail to provide competent representation to Kane. Although he admits to not having kept complete or well-documented files, he contends that he "did keep the client informed of developments; and he acted diligently in pursuing the client's objectives."

 Sound record-keeping is an essential part of competent representation. Rule 1.1 requires, among other things, the "thoroughness and preparation reasonably necessary for the representation." An important part of a lawyer's thorough preparation is keeping detailed, accurate, and accessible records. In *Att'y Grievance Comm'n v. Agiliga*, 422 Md. 613, 616, 31 A.3d 103, 105 (2011), we based our conclusion that a lawyer had violated Rule 1.1 in part on his "fail[ure] to maintain records concerning the cases of [certain clients]" and

"[m]inimal records . . . regarding [other clients]." *See also Taylor,* 405 Md. at 718, 955 A.2d at 767 ("[A]n attorney violates Rule 8.1(b) when he fails to make a timely and orderly reply even though the failure was because of disorganization in his record keeping practices."); *Sapero,* 400 Md. at 486, 929 A.2d at 498 (lawyer violated the MLRPC when he "attempted to comply with the subpoena, but did not comply, in a timely manner, because of disorganization in his record keeping practices").

 London may have kept perfectly good records, but because he moved them into storage in such a way that prevented access to them, they were of no use. Without reasonable access to a client's records, a lawyer cannot hope to meet the standard of "thoroughness and preparation necessary for the representation." Rule 1.1. In light of *Agiliga* and the purpose of Rule 1.1, we think London's failure to maintain accessible records constitutes a violation of Rule 1.1, and therefore overrule this exception.

### Sanction for Violation of MLRPC Rules 1.1, 1.3, 1.4, 1.15, and 8.4

 Bar Counsel recommends that London be disbarred in light of his "prior disciplinary record and the finding that he willfully misrepresented the status of cases to his client." Disbarment is "particularly appropriate in this case[,]" Bar Counsel contends, because London was previously disbarred in 1977 [14] and because "disbarment is normally the appropriate sanction for intentionally dishonest conduct." In response, London's counsel suggested at oral argument that a mentoring program would be more appropriate, contending that London's unethical actions can be attributed to "negligent and careless" practice. London's counsel, who is a personal friend of his, offered to serve as his mentor.

---

**14.** *See generally In re Reinstatement of London,* 356 Md. 173, 738 A.2d 852 (1999).

Yet as Bar Counsel correctly points out, "when it appears that the attorney has engaged in intentional dishonest conduct . . . disbarment will be the appropriate sanction absent compelling extenuating circumstances." *Att'y Grievance Comm'n v. Keiner*, 421 Md. 492, 523, 27 A.3d 153, 172 (2011) (quotation marks and punctuation omitted) (quoting *Att'y Grievance Comm'n v. Palmer*, 417 Md. 185, 207, 9 A.3d 37, 50 (2010)). Here, London presented no mitigating circumstances, and his previous disbarment militates toward disbarring him again. *See Att'y Grievance Comm'n v. Velasquez*, 380 Md. 651, 661, 846 A.2d 422, 428 (2004) ("[T]he appropriate sanction is disbarment. This is especially so where, as in this case, the respondent previously has been disbarred.").

Concerning the misrepresentation, we find guidance in *Att'y Grievance Comm'n v. Lane*, 367 Md. 633, 790 A.2d 621 (2002), in which we disbarred a lawyer for misrepresentations to his clients. As we described, the lawyer had "failed to diligently act on his clients' behalf and he then compounded this failure by engaging in a pattern of deceitful and lying conduct designed to conceal his lack of diligence." *Lane*, 367 Md. at 647, 790 A.2d at 629. This is similar to what Kane described in his testimony: that London met with him as many as 10 times about the 813 N. Carey Street matter, each time representing that he was working on transferring and filing the deed, but never completed the task. Kane testified: "After three to four years of getting the run around from [London], I was able to [complete the transfer myself] within days."

We observed in *Lane* that such "continual deceit" could "herald problems for [the lawyer's] future clients." 367 Md. at 647, 790 A.2d at 629. Thus, because "the purpose of this proceeding is to protect the public," we disbarred the lawyer. *Id.* at 647–48, 790 A.2d at 629. We also disbarred lawyers for intentionally misrepresenting work to their clients in *Webster*, 402 Md. at 462–63, 474, 937 A.2d at 169, 176, and *Steinberg*, 395 Md. at 369–70, 376, 910 A.2d at 448, 452. Accordingly, we shall disbar London.

IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING COSTS OF ALL TRANSCRIPTS, PURSUANT TO MARYLAND RULE 16–761. JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION AGAINST PERRY ALLEN LONDON IN THE SUM OF THESE COSTS.